OJEDA ET AL., DEMANDANTES Y APELADOS-APELANTES, *v.* FERNÁNDEZ ET AL., DEMANDADOS-APELANTES-APELADOS.

APELACIÓN procedente de la Corte de Distrito de San Juan, Distrito Primero, en pleito sobre daños y perjuicios.

No. 2913.—Resuelto en febrero 7, 1924.

ARRENDAMIENTO—OBLIGACIONES DEL ARRENDADOR.—En el presente caso se trata de un arrendamiento del piso inferior de una casa estando el superior en posesión de otros inquilinos, en el cual quedó facultado el arrendatario para subarrendar "bajo su exclusiva responsabilidad." Interpretando tal cláusula a la luz de estos y otros hechos, *se resolvió:* que cualquiera que sea su significado, no puede concluirse que fuera la intención de las partes que por ella se relevara al dueño de su obligación de conservar el techo del edificio en buen estado de conservación.

ID.—DAÑOS Y PERJUICIOS—CESIÓN DE ACCIONES.—El derecho a daños por incumplimiento de un contrato es también transmisible, y un derecho contractual demasiado personal para poder ser cedido puede al ser violado dar lugar a una acción por daños que es transmisible.

ID.—CESIÓN DE ACCIONES; CAUSA DEL CONTRATO.—En el presente caso los subarrendatarios sufrieron daños a causa de aguas que se filtraron por el techo del edificio. Los subarrendadores reconocieron su responsabilidad para con los subarrendatarios y, en consideración de una completa exoneración de tal

responsabilidad, cedieron a éstos cualquier derecho de acción que ellos, como arrendatarios del piso inferior, tuvieran o pudieran tener contra los dueños del edificio. *Se resolvió:* que en tal cesión existió causa.

Los hechos están expresados en la opinión.

Abogados de los apelados-apelantes: *Sres. P. G. Quiñones* y *L. Toro Cabañas.*

Abogado de los apelantes-apelados: *Sr. Juan de Guzmán Benítez.*

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del tribunal.

J. Laza & Co., arrendatarios del piso inferior de un edificio propiedad de los demandados en este caso, subarrendaron una parte del local así ocupado a Andrés y José Ojeda. El piso superior estaba en posesión de otros inquilinos. Los dueños del edificio residían en España, y su apoderado encargado del edificio estaba ausente al tiempo de ocurrir el hecho que dió lugar a la presente controversia.

Habiendo empezado a filtrarse agua por el plafón de la habitación ocupada por Ojeda Hermanos, ellos prontamente lo notificaron a Laza & Ca.; y al hacerse una investigación se encontró una gotera en el techo del edificio. Entonces un representante de Laza & Ca., acompañado por uno de los hermanos Ojeda, fue a la oficina del apoderado y allí se le dijo que el agente estaba en Santo Domingo y no había delegado autoridad en persona alguna para actuar en su nombre y lugar. Sin embargo, los socios del apoderado estaban perfectamente informados del carácter urgente de la situación, y nada se hizo para impedir el daño amenazado.

Este incidente ocurrió un jueves o viernes. El local ocupado por Ojeda Hermanos fué cerrado como de costumbre desde el sábado a las doce hasta la mañana del lunes, y al abrirse las puertas el lunes se encontró que el contenido del local estaba completamente mojado y dañado por el agua.

J. Laza & Ca. entonces reconocieron su responsabilidad para con Ojeda Hermanos y, en consideración de una completa exoneración de tal responsabilidad, cedieron a Ojeda Hermanos cualquier derecho de acción que ellos, como arrendatarios del piso inferior, tuvieran o pudieran tener contra los dueños del edificio.

Vino entonces el presente pleito por daños y perjuicios, y ambas partes apelan de una sentencia a favor de los demandantes.

El único error señalado por los demandantes es en substancia que la suma concedida por daños es inadecuada; y bastará decir que no encontramos tal abuso de discreción en la apreciación de la prueba en ese respecto que exija una revocación.

El alegato de los demandados no contiene un señalamiento de errores por separado, pero en el curso de la discusión se sugiere que la corte inferior erró, primero, al no archivar un pliego de conclusiones de hecho y de derecho; segundo, al desestimar la excepción previa de falta de hechos suficientes para constituir una causa de acción; tercero, al admitir prueba documental de la transacción y cesión entre Laza & Ca. y los demandantes; y cuarto, al no concluir que los demandados habían cumplido sus obligaciones bajo su contrato con Laza, que si la propiedad del demandante había sido dañada por el agua tal daño era debido a su propia negligencia, y que los daños reclamados no han sido probados.

La proposición sometida en el primer señalamiento no exige seria consideración por la razón de que no parece haberse levantado cuestión alguna en la corte inferior sobre ese punto, y el efecto de tal omisión no es discutido en el alegato. *Nones* v. *Serrallés,* pág. 736.

Con referencia al segundo señalamiento bastaría decir que la discusión se refiere más bien a la suficiencia de la prueba que a la de la demanda. Pero Ojeda Hermanos y J. Laza

& Ca. eran ambos arrendatarios de los dueños, aquí demandados, antes de otorgarse el contrato de arrendamiento que dió a Laza & Ca. el uso de toda la planta baja con el derecho de subarrendar "bajo su exclusiva responsabilidad;" y, cualquier otro significado que pueda tener la cláusula que acabamos de citar, estamos constreñidos a resolver que no fué la intención de las partes que por ella se relevara a los dueños de su obligación como arrendadores de conservar el techo del edificio en buen estado de conservación.

La teoría del tercer señalamiento es que el contrato de cesión no era válido por falta de "causa" bastante y por la razón de que por su faz muestra una conspiración entre las partes contratantes, que Laza no tenía derecho alguno existente contra los dueños, y que Ojeda nada recibió en cambio de la exoneración que él otorgó.

La contención de que el documento sin más nada establecía la existencia de una conspiración, claramente carece de mérito.

Ciertos otros aspectos de la cuestión que aquí se ha tratado de levantar no están, quizá, enteramente libres de duda; pero en el alegato no se cita autoridad de directa aplicación ni contiene un argumento muy persuasivo en apoyo de la proposición sometida. Esta corte, según hemos anunciado repetidamente, no puede asumir la investigación independiente de cuestiones más o menos dudosas, presentadas en tal forma.

Claramente la cosa en litigio (*chose in action*) en este caso no era un "crédito litigioso" dentro del significado del segundo apartado del artículo 1438 del Código Civil. Escriche, vol. 3, pág. 84; Enciclopedia Jurídica Española, vol. 9, pág. 753. Pero de esto no se desprende que un derecho de acción no es transmisible antes de establecerse un pleito y trabarse la contienda en el mismo.

Los artículos 1068 y 1079 del Código Civil dicen como sigue:

"Art. 1068.—Quedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravinieren al tenor de aquéllas.

"Art. 1079.—Todos los derechos adquiridos en virtud de una obligación son transmisibles con sujeción a las leyes, si no se hubiere pactado lo contrario."

Estos artículos parecen estar en concordancia con la siguiente cita que hace el abogado de los demandantes:

"El derecho a daños por incumplimiento de un contrato es también transmisible, y un derecho contractual demasiado personal para poder ser cedido puede al ser violado dar lugar a una acción por daños que es transmisible." 1 Williston on Contracts, sec. 413, p. 767. Véase también 2 R. C. L. p. 595, sec. 3.

No creemos necesario entrar con el abogado de los demandantes en una interesante discusión de las varias distinciones que pueden hacerse entre la "consideración" de la jurisprudencia anglo-americana y la "causa" del derecho civil.

Aquí el incumplimiento de la obligación de conservar el local en buen estado de conservación era la esencia de las dos causas de acción que surgieron inmediatamente después del suceso, y el importe de los daños resultantes en ambos casos era la medida, no la base, de la responsabilidad. En la mañana del lunes que siguió a la omisión de reparar el techo, ambas causas de acción ya habían surgido. La obligación por parte de los dueños para con Laza & Ca., así como la de Laza & Ca. para con los demandantes, habían sido violadas. Se había hecho el daño, y Laza al igual que Ojeda Hermanos tenían derecho a compensación.

Si Laza & Ca. hubieran entablado un pleito inmediatamente, ellos hubieran tenido derecho por lo menos a daños nominales por la invasión de sus derechos bajo su contrato. Ya habían sido expuestos, sin culpa alguna de su parte, a

una responsabilidad existente e incuestionable, bajo su contrato con Ojeda Hermanos, por los daños sufridos por éstos.

Desde luego, Laza & Ca. pudieron haber esperado que Ojeda Hermanos entablaran acción, y entonces haber requerido a los dueños a que defendieran la misma o se pusieran de acuerdo para un arreglo; y en caso de omisión por parte de los dueños de defenderse o de participar en tal arreglo, entonces indiscutiblemente Laza & Co. hubieran tenido una acción contra los dueños por el montante de cualquier sentencia que se dictara contra ellos o por cualquier suma pagada en una transacción razonable. Pero ellos no estaban obligados a adoptar este curso, que, en todo caso, pudiera haber traído alguna cuestión o riesgo con respecto al reembolso de las costas y honorarios de abogado.

Además, quizá ellos. pudieron haber entablado acción inmediatamente contra los dueños y pedir que la valoración de los daños quedara en suspenso hasta la resolución final de cualquier acción que. contra ellos establecieran Ojeda Hermanos. Pero ello no quiere decir que ésta fuera su única alternativa.

No es asunto que debamos discutir cuál hubiera podido ser el resultado si Laza & Ca., sin dar aviso a los dueños, hubieran defendido y perdido un pleito que terminara por sentencia por daños excesivos, con costas y honorarios de abogado, o si ellos hubieran pagado una suma exorbitante y considerable por vía de arreglo y transacción, pues ellos nada de esto hicieron.

Si Laza & Ca. tenían, como evidentemente tenían, derecho a evitar, mediante un convenio de transacción, la molestia, incomodidad y gastos que traería consigo el defender la acción inminente de Ojeda Hermanos, no vemos razón alguna suficiente por la cual no debiera permitírseles ceder aquella causa de acción que entonces tuvieran contra los dueños, en consideración por una exoneración de toda responsabilidad bajo su contrato con Ojeda Hermanos. En

todo caso la sentencia apelada se presume ser correcta, y siempre incumbe al apelante establecer su alegación sobre la existencia de cualquier error.

El cuarto señalamiento se refiere a la suficiencia de la prueba, y, aunque hay lugar para alguna discusión en este respecto, no nos sentimos justificados para alterar la conclusión a que llegó el juez sentenciador.

La sentencia de la corte inferior debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Wolf, Aldrey y Franco Soto.