GLORIA ESTER y DOMINGO CASTELLANO ROSARIÓ, representados por su defensor judicial RAMÓN CLEMENTE GONZÁLEZ, demandantes y apelantes, v. PUERTO RICO BEVERAGES AND FLAVORING, INC., y AMERICAN RAILROAD COMPANY OF PUERTO RICO, demandadas y apeladas.

Número 10775.

*Sometido:* 5 de marzo de 1953. *Resuelto:* 14 de mayo de 1953.

*E. Martínez Avilés,* abogado de los apelantes; *Benicio Sánchez Castaño* y *R. Rivero Cervera,* abogados de la apelada Puerto Rico Beverages & Flavoring, Inc.; *L. E. Dubón, R. García Cintrón, L. Ríos Algarín, F. Fornaris, Jr.* y *Jaime Pieras, Jr.,* abogados de la apelada, American Railroad Co. of Puerto Rico.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del tribunal.

El día 25 de mayo de 1949 y en la calle Bolívar de la Parada 24 en Santurce, la locomotora número 602, propiedad de la American Railroad Company of Puerto Rico chocó con un camión perteneciente a la Puerto Rico Beverages and Flavoring, Inc. Como resultado de dicha colisión falleció un peón del referido camión, llamado Domingo Castellano Rivera. El Administrador del Fondo del Seguro del Estado resolvió que este obrero trabajaba para un patrono no asegurado y otorgó a sus beneficiarios una compensación de $2,761, correspondiendo de dicha suma a la viuda del occiso un 40 por ciento y a sus dos hijos menores, un 20 por ciento a cada uno, o sea, una cantidad total de $2,208.80. El patrono Puerto Rico Beverages and Flavoring, Inc., satisfizo la mencionada compensación.

La viuda del obrero fenecido, Elsa Rosario Galíndez, por sí y en su carácter de madre con patria potestad sobre sus menores hijos Gloria Esther y Domingo Castellano, demandó en el anterior Tribunal de Distrito de Puerto Rico, Sección de San Juan, a la American Railroad Company of Puerto Rico y a la Puerto Rico Beverages and Flavoring, Inc., reclamando daños y perjuicios por la muerte del susodicho obrero Domingo Castellano Rivera.[1] En su demanda alegaron

---

[1] Habiendo fallecido posteriormente Elsa Rosario Galíndez, se radicó una demanda enmendada en la que figuran como demandantes los menores Gloria Esther y Domingo Castellano Rosario, representados por su defensor judicial Ramón Clemente González. En dicha demanda enmendada los menores, aducen su causa de acción original y además sustituyen a su señora madre en la causa de acción que ella había ejercitado por su propio derecho.

que la muerte de su causante se debió a la culpa y negligencia de ambas demandadas, consistente la de la American Railroad Company of Puerto Rico en que no tenía guardabarreras en el paso a nivel donde ocurrió el accidente y en cuanto a la Puerto Rico Beverages & Flavoring, Inc., alegaron que su culpa y negligencia consistió en que el conductor del camión, Pablo Castellano Rivera, guiaba dicho camión a velocidad excesiva y en forma descuidada. También alegaron que su causante era un hombre joven de aproximadamente 28 años de edad y que devengaba un jornal promedio de $2.40 diario. Solicitaron una sentencia por $25,000.

Ambas demandadas contestaron. La Puerto Rico Beverages & Flavoring, Inc., negó tener responsabilidad. Alegó que el accidente se debió única y exclusivamente a la negligencia y descuido de la otra codemandada. Además adujo una reclamación recíproca contra dicha codemandada reclamando la suma de $4,498.57 por concepto de los daños sufridos por ella como resultado del accidente. Por su parte la American Railroad Company of Puerto Rico negó tener responsabilidad alguna y alegó que el accidente se debió única y exclusivamente al descuido y negligencia del conductor del camión de la otra demandada.

Así trabada la contienda se celebró un juicio en los méritos y después de formular conclusiones de hechos y de derecho, la corte a quo dictó sentencia desestimando tanto la demanda como la reclamación recíproca interpuesta por la Puerto Rico Beverages & Flavoring, Inc.

Los demandantes son los únicos que han apelado de dicha sentencia. Señalan la comisión de siete errores. Sin embargo, para disponer de este recurso bastará que consideremos, tres cuestiones fundamentales resueltas por la corte a quo, a saber: (1) que la causa próxima del accidente fué la negligencia de Pablo Castellano Rivera, empleado de la demandada Puerto Rico Beverages & Flavoring, Inc., y conductor del camión donde viajaba en calidad de peón, el cau-

sante de los demandantes; (2) que en dicho accidente no medió negligencia alguna de partes de la codemandada American Railroad Company of Puerto Rico; y (3) que "en ausencia de prueba en contrario, la cantidad de $3,098.57 recibida por los demandantes como compensación por la muerte de su causante es justa, adecuada y suficiente".

■ La prueba fué contradictoria en cuanto a la forma como ocurrió el accidente. Mas, al dirimir el conflicto en dicha prueba, la corte sentenciadora consideró probados los siguientes hechos:

"4. Al aproximarse el tren al paso a nivel donde ocurrió el accidente, y estando ya la locomotora a la entrada de la Calle Bolívar, el camión propiedad de la co-demandada Puerto Rico Beverages and Flavoring, Inc., se lanzó a cruzar sobre la vía, siendo alcanzado por la locomotora, resultando casi totalmente destruído tanto el camión como las cajas de botellas vacías que llevaba.

"5. El tren marchaba a una velocidad aproximada de 10 a 15 kilómetros por hora, y tanto el silbato como la campana de la locomotora venían siendo operados por los encargados de ésta desde mucho antes de ocurrir el accidente hasta el momento mismo del impacto y aún después. Además, varios de los testigos que se encontraban en el paso a nivel cuando ocurrió el accidente, se habían percatado de que el tren se aproximaba al cruce a una velocidad moderada por el trepidar de la locomotora y el ruido que sobre los railes hacían los vagones cargados de azúcar.

"6. Que las personas que se encontraban en el sitio donde ocurrió el accidente le hicieron repetidas señales con las manos y le gritaron al conductor del camión que se detuviera, ya que se acercaba el tren, cuya locomotora venía pitando y tocando campana; pero el conductor del vehículo o no vió u oyó o no hizo caso a las señales, y sin detenerse al acercarse a la vía ni reducir su velocidad, que era bastante, se lanzó a cruzar el paso a nivel, siendo alcanzado por la locomotora.

"7. Que en el paso a nivel de la Calle Bolívar donde ocurrió el accidente existían al tiempo del accidente unas crucetas de metal montadas en postes de acero, las cuales sirven de aviso a los vehículos y peatones de que se aproximan a cruzar un

paso a nivel, con una leyenda que conmina a todas las personas a detenerse, mirar y oír antes de cruzar.

"8. Que Pablo Castellano Rivera, conductor del camión propiedad de la co–demandada Puerto Rico Beverages and Flavoring, Inc., conocía el paso a nivel donde ocurrió el accidente, sabía que por allí pasaban trenes, había transitado por dicho sitio con bastante frecuencia, y sabía o debía saber que allí no había barreras ni cadenas.

"9. La causa próxima del accidente fué la negligencia de Pablo Castellano Rivera, empleado de la Puerto Rico Beverages and Flavoring, Inc., y conductor del camión donde viajaba Domingo Castellano Rivera en calidad de peón, consistiendo dicha negligencia en no haberse detenido y mirar y oír antes de cruzar la vía férrea a pesar de que la locomotora se aproximaba al paso a nivel momentos antes de ocurrir el accidente haciendo bastante ruido, pitando duro y con su campana tocando, y a pesar también de que varios circunstantes le hicieron señales y le gritaron que se detuviera que el tren se acercaba.

"10. No existió negligencia alguna de parte de la co–demandada American Railroad Company of Porto Rico o de sus empleados en los hechos que dieron lugar al presente caso."

Un estudio cuidadoso de la transcripción de evidencia elevada a este Tribunal, revela que las anteriores conclusiones están ampliamente sostenidas por la prueba. A falta de demostración de que se cometió error manifiesto al apreciar dicha prueba o de que la corte a quo actuó movida por pasión, prejuicio o parcialidad, no alteraremos esas conclusiones en apelación. *Quiñones* v. *Tropical Beverages, Inc.*, ante pág. 364, y casos allí citados.

█ Los apelantes insisten en que la demandada American Railroad Company of Puerto Rico, fué negligente. Arguyen que de acuerdo con el inciso "*q*" de la sección 3 de la Ley núm. 70, Leyes de Puerto Rico, 1917, Tomo II y lo resuelto en el caso de *Cordero, Admor.* v. *Am. Railroad Co.*, 66 D.P.R. 460, el no mantener un aparato de protección en el paso a nivel de la calle Bolívar, constituye negligencia *per se*. Ello sería así, de ser éste un paso a nivel sujeto al in-

ciso "*q*". (²)    *Línea Borinquen, Inc.* v. *Am. Railroad Co.*, 53 D.P.R. 309.    Conforme a lo dispuesto en el citado inciso "*q*", una compañía de ferrocarril viene obligada a construir y conservar cadenas, portones u otros aparatos adecuados de protección, en todos los cruces a nivel de las carreteras públicas insulares y en los demás cruces públicos que la Comisión de Servicio Público designare.

La evidencia no demuestra que la calle Bolívar sea una carretera pública insular.    Si bien el sitio donde ocurrió el accidente es un cruce público, la prueba tampoco demuestra que sea uno de los designados por la Comisión de Servicio Público y donde, por tanto, la apelada venía obligada a conservar aparatos de protección.    En consecuencia debemos resolver que la demandada American Railroad Company of Puerto Rico no incurrió en negligencia al dejar de mantener aparatos de protección en el paso a nivel de la calle Bolívar. (³)

█    Ahora procederemos a decidir si la corte a quo cometió error al resolver que de acuerdo con la prueba que tuvo ante sí, la cantidad de $3,098.57 recibida por los demandantes como compensación por la muerte de su causante es justa, adecuada y suficiente.

---

(²) Dicho inciso dispone lo siguiente:

"*(q) Aparatos de seguridad en cruces, etc.*—Si se tratare de una compañía de ferrocarril, ésta deberá construir y conservar cadenas, portones u otros aparatos adecuados de protección, en todos los cruces a nivel de las carreteras públicas insulares y en los demás cruces públicos que la Comisión designare y, con sujeción a las reglas, reglamentos y órdenes de la Comisión, deberá cercar o de otra manera adecuada guardar o proteger sus vías, en aquellos sitios que la Comisión designare, de modo que los animales no puedan entrar en ella; deberá instalar en sus locomotoras campanas y silbatos que deberán usarse al acercarse a curvas, túneles y a los cruces de caminos o calles y siempre que fuere necesario como advertencia de la aproximación de dichas locomotoras y trenes los que reducirán la velocidad al mínimum en los cruces de calles;  y deberá usar, después de la puesta del sol, las luces que sean necesarias y que la Comisión determine."

(³) Interpretando el artículo 12 de la Ley núm. 64 de 9 de marzo de 1911, según fuera enmendada por la núm. 12 de 11 de marzo de 1915, que imponía obligación a las compañías de ferrocarril de mantener aparatos de protección en los cruces de las carreteras públicas insulares y

Los apelados admiten que la compensación recibida por los apelantes a través del Fondo del Seguro del Estado, fué de $2,208.80 en vez de la suma señalada por la corte sentenciadora. Argumentan, sin embargo, que tal error de cálculo matemático no afecta el resultado final a que llegó dicha corte, toda vez que en el récord hay ausencia absoluta de prueba sobre los daños sufridos por los demandantes. Como ya hemos determinado, que la demandada American Railroad Company of Puerto Rico, no es responsable, examinaremos esta cuestión únicamente en relación con la codemandada Puerto Rico Beverages & Flavoring, Inc.

Para probar los daños y perjuicios alegados en la demanda, los apelantes descansaron exclusivamente en la copia certificada de la resolución del Administrador del Fondo del Seguro del Estado, presentada en evidencia por ellos y admitida por la corte a quo con la objeción de las apeladas. Por dicha resolución se concedió a los apelantes compensación por la muerte de su padre Domingo Castellano Rivera y en ella se consignan los siguientes hechos esenciales que sirvieron de base al Administrador para fijar la compensación: (1) que para la fecha del accidente Domingo Castellano Rivera trabajaba para el patrono no asegurado, Puerto Rico Beverages & Flavoring, Inc.; (2) que la muerte de dicho obrero fué resultado de un accidente del trabajo; (3) que para la fecha de su muerte, el referido obrero tenía 28 años de edad y devengaba un jornal promedio diario de $2.40; y (4) que este

demás cruces públicos que el Consejo Ejecutivo designare, dijimos en el caso de *Fajardo* v. *American Railroad Company*, 27 D.P.R. 608, a la pág. 614, "Nosotros opinamos que la Ley núm. 64 sólo impone ese deber en los pasos a nivel o cruces en las carreteras públicas insulares y en aquellos otros que el Consejo Ejecutivo designare; y como la calle Méndez Vigo no es una carretera pública insular sino una calle de la población de Mayagüez, ni el Consejo Ejecutivo ha dispuesto que en tal cruce se pongan barreras, cadenas u otros medios de protección de la índole de esos, no estaba obligada la demandada a tener tales medios de protección en dicho sitio y, por tanto, no ha incurrido en negligencia al dejar de tenerlos."

Para la definición de *carreteras públicas insulares*, véase, *American R. Co. of Porto Rico* v. *López*, 3 F. 2d 876. Véase además la Ley núm. 80 de 13 de mayo de 1936 ((1) pág. 431).

obrero sostenía con el producto de su salario a su esposa Elsa Rosario Galíndez, a sus menores hijos Gloria Esther y Domingo Castellano y a sus padres, Manuel Castellano y María Antonia Rivera.

La objeción de la Puerto Rico Beverages & Flavoring, Inc., a la admisión de ese documento como prueba, se fundó en que la cantidad pagada por ella al Fondo del Seguro del Estado era mayor que la consignada en dicho documento. (⁴) Ahora alega ante nos, que la corte inferior no podía considerar los hechos consignados en dicha resolución para fijar la cuantía de los daños sufridos por los apelantes y que tales hechos no hacen prueba contra ella.

A nuestro juicio la apelada no tiene razón. En el presente caso existen circunstancias que nos inclinan a resolver que las conclusiones de hechos consignadas por el Administrador en la resolución admitida en evidencia, hacen prueba, por lo menos *prima facie*, contra la demandada Puerto Rico Beverages & Flavoring, Inc. Nos explicamos. De acuerdo con el apartado 5 del artículo 3 de la "Ley de Compensaciones por Accidentes del Trabajo", según fué enmendado por la Ley núm. 162 aprobada en 14 de mayo de 1943 (pág. 525), cuando un obrero o empleado fallece a consecuencia de un accidente del trabajo, sus dependientes recibirán una compensación de $1,000 a $3,000 que se graduará en atención a la *capacidad económica* del obrero o empleado fallecido y *sus probabilidades de vida* de acuerdo con ciertas reglas que debe preparar el Administrador del Fondo del Seguro del Estado. De suerte que al fijarse la compensación en caso de muerte, deben considerarse dos factores, a saber, (1) capacidad económica del obrero o empleado fallecido, y (2) sus probabilidades de vida. Por otro lado, el artículo 15 de la misma ley dispone que en el caso de que ocurriere un accidente a un obrero o empleado cuando trabajare para un patrono que en violación de la ley

---

(⁴) En realidad dicha apelada pagó al Fondo del Seguro del Estado una suma mayor pero el exceso no fué adjudicado a los apelantes y sí a otros obreros que resultaron lesionados en el mismo accidente.

no estuviere asegurado, el Administrador del Fondo del Estado determinará la compensación que proceda más los gastos en el caso y certificará su decisión al Tesorero de Puerto Rico para que éste le cobre al patrono. Dispone además dicho artículo que la Comisión Industrial dará, tanto al patrono como al obrero o empleado, en el caso, *oportunidad* de ser oídos y defenderse, ajustándose en lo posible a las prácticas observadas en las cortes de distrito.

El récord en este caso demuestra que la Puerto Rico Beverages & Flavoring, Inc., estuvo conforme con la compensación fijada por el Administrador del Fondo del Estado y la pagó, sin solicitar de la Comisión Industrial la oportunidad de ser oído y defenderse. En otras palabras, aceptó como correcta la determinación hecha por el Administrador en cuanto a la cuantía de la compensación, la que necesariamente, por disposición de ley, tuvo que fundarse en (1) la capacidad económica del obrero fallecido y (2) sus probabilidades de vida. Para determinar el primer factor había que considerar el jornal promedio que percibía el obrero y en cuanto al segundo, su edad al tiempo de su muerte. Por tanto, la conducta de la demandada, al aceptar como correcta la resolución del Administrador implica una admisión de los hechos que sirven de base a dicha resolución.

Esta situación guarda alguna analogía con la de un demandado en rebeldía. En tal caso la rebeldía opera como una admisión por el demandado de que la causa de acción expuesta en la demanda es cierta. Esto es así porque el dejar de negar puede equivaler a una admisión por silencio. Generalmente los hechos así admitidos son admisibles contra un demandado en rebeldía, en una acción subsiguiente. Véase Wigmore *On Evidence* (Tercera Edición), Vol. IV, sección 1066 (6) pág. 60 y 49 C.J.S., sección 201, pág. 357.

Si bien en el caso de autos, no puede decirse que hayan alegaciones de una parte demandante, existió sin embargo, el derecho a la compensación. Y la cuantía de ésta, se graduó a base de la edad del obrero fenecido (28 años) y de su

capacidad económica (jornal promedio de $2.40 diario). Aceptada la determinación hecha por el Administrador del Fondo del Seguro del Estado, se aceptaron los hechos básicos que le sirvieron de fundamento. Por tanto, la corte a quo, tuvo ante sí, los siguientes hechos a ser considerados para determinar los daños y perjuicios sufridos por los demandantes: (1) fallecimiento de su padre y en consecuencia, pérdida de su compañía; (2) que el obrero fallecido era un hombre joven de 28 años de edad; (3) que dicho obrero percibía un jornal promedio diario de $2.40; y (4) que los demandantes dependían del salario de su padre para su sustento. Hemos visto que de la compensación pagada por la Puerto Rico Beverages & Flavoring, Inc., a los dependientes de Domingo Castellano Rivera, correspondió a los dos menores apelantes, un cuarenta por ciento de $2,208.80, o sea, la suma de $883.52. Obviamente esta cantidad no indemniza adecuada y suficientemente los daños y perjuicios sufridos por los demandantes apelantes. En vista de los hechos probados, debe fijarse una indemnización de $5,000; debiendo deducirse de esta suma, la cantidad de $883.52 satisfecha a los demandantes. ([5])

*La sentencia apelada será revocada y en su lugar se dictará otra declarando con lugar la demanda y condenando a la demandada apelada Puerto Rico Beverages & Flavoring, Inc., a pagar a los demandantes apelantes, en concepto de daños y perjuicios, la suma de $5,000, de la cual se deducirá la cantidad de $883.52, satisfecha por la demandada a los demandantes a través del Fondo del Seguro del Estado. Además se condena a dicha demandada a pagar las costas del litigio y una suma de $350 para honorarios de abogado.*

El Juez Asociado Sr. Ortiz no intervino.

---

([5]) Al llegar a estas conclusiones, asumimos que el tribunal a quo, resolvió correctamente que la compensación recibida por la madre de los apelantes, en ausencia de prueba sobre otros elementos de daño, era suficiente y por tanto, creemos innecesario considerar la contención de los apelantes sobre sus derechos como herederos de la causa de acción ejercitada por ella.