Marcelino Robles Menéndez y Otros, peticionarios, *v.*
Tribunal Superior de Puerto Rico, Sala de San Juan,
Honorable Luis R. Polo, Juez, recurrido.

*Número:* 2562    *Resuelto:* 12 de junio de 1962

*Godofredo M. Gaetán Roberts, Pedro Juan Alcalá* y *Wilfrido Roberts,* abogados de los peticionarios; *F. Fernández Cuyar,* abogado del interventor.

Sala integrada por el Juez Asociado señor Belaval como Presidente de Sala y los Jueces Asociados señores Hernández Matos y Santana Becerra.

PER CURIAM: En este recurso expedimos el auto para revisar una resolución de fecha 19 de junio de 1959, dictada por el tribunal de primera instancia respecto a un discutido derecho de subrogación *pro tanto.*

Los antecedentes de la cuestión están expuestos con fidelidad y precisión en la solicitud del recurso en la siguiente forma:

"1. El día 17 de febrero de 1953, mientras José Robles Rosa, empleado de Alberto H. Biascoechea, y actuando en el curso de sus funciones como tal, viajaba en un camión propiedad de y conducido por Ramón Maldonado Martínez, ocurrió una colisión entre dicho camión y otro propiedad de Raúl Gayá Benejam, Inc.; dicha colisión se debió a la negligencia combinada de los conductores de ambos camiones y como resultado de la misma falleció el mencionado José Robles Rosa.

"2. En noviembre 8 de 1954 el Administrador del Fondo del Seguro del Estado, actuando en cumplimiento de la Ley de Indemnizaciones a Obreros, a base de que Biascoechea era patrono no asegurado en este caso, condenó a Biascoechea a pagar a los beneficiarios de José Robles Rosa la suma de

$2,910.00. Esta suma fue pagada por Biascoechea, después de haber sido demandado judicialmente, y haberse ordenado el embargo de bienes inmuebles de su propiedad.

"3. Posteriormente, en enero 21 de 1955, vuestros peticionarios radicaron ante el Tribunal inferior una demanda contra los dueños de los camiones causantes del accidente, y sus respectivos aseguradores, reclamándoles indemnización por los daños y perjuicios sufridos como consecuencia de la muerte del obrero José Robles Rosa, ocurrida en dicho accidente." (Caso Núm. CS-55-269.)

"4. En febrero 18 de 1955, el citado patrono no asegurado Alberto H. Biascoechea, radicó demanda de intervención dentro del referido caso de daños y perjuicios, alegando que en virtud del pago de $2,910.00 que había hecho a los beneficiarios del obrero José Robles Rosa, quedaba subrogado pro tanto en los derechos de éstos contra los allí demandados, causantes de la muerte del obrero.

"5. El tribunal inferior declaró sin lugar una moción de desestimación contra la demanda de intervención; y en abril 4 de 1955, los demandantes contestaron la demanda de intervención, alegando que a pesar del pago hécholes por el Interventor, éste no tenía derecho alguno a subrogarse en la acción de los demandantes contra los demandados, o sean los terceros responsables de la muerte del obrero José Robles Rosa.

"6. En diciembre 4 de 1958, al llamarse el citado caso para juicio comparecieron todas las partes y sometieron al Tribunal a quo la siguiente estipulación sobre transacción:

'Las demandadas admiten su responsabilidad de pagar la indemnización correspondiente por la muerte de José Robles Rosa, causante de los demandantes. Las demandadas admiten todas las alegaciones de la demanda de inter-vención, y los demandantes también admiten todas las alegaciones de la demanda de intervención. Las demandadas admiten el derecho del interventor a subrogarse pro tanto. Los demandantes niegan ese derecho. Entonces se ha convenido por las demandadas y los demandantes transigir la reclamación de los demandantes todos por la suma de $6,930.

'Entonces, convenida por los demandantes y las demandadas la transacción en la suma de $6,930.00. Y admitidas por todas las partes como correctas todas las alegaciones de la demanda de intervención, queda solamente en contro-

versia, como cuestión de derecho, el derecho o falta de derecho del interventor a lo que solicita en su demanda. Tan pronto el Tribunal resuelva sobre este extremo de derecho, y asumiendo que se apruebe la referida transacción en cuanto concierne al menor demandante, las demandadas depositarán en la Secretaría de este Tribunal la mencionada suma de $6,930.00, la cual será entregada a los respectivos participantes en la misma en la forma que decida el Tribunal.'

"7. Discutido ampliamente por los demandantes y el Interventor el derecho de éste a lo que solicitaba en su demanda de intervención, con fecha del día 19 de junio de 1959, el Tribunal inferior dictó resolución decidiendo que el interventor Alberto H. Biascoechea tenía derecho a subrogarse pro tanto en los derechos de los demandantes contra los demandados causantes de la muerte del obrero, hasta la suma de $2,910.00."

Una moción de reconsideración fue declarada sin lugar dejando el juzgador en pie su resolución.

Los peticionarios atacan la resolución por tres fundamentos, a saber: (1) porque la ley no autorizaba la subrogación del patrono; (2) porque no existe la doble compensación a que se refirió el tribunal de instancia en su resolución, y (3) porque el Artículo 1112 del Código Civil no es de aplicación al caso.

Podrá tener razón en el primero, pero no en los demás puntos. Después de un estudio del problema planteado, estimamos que debe confirmarse la resolución impugnada. **[1-3]**

A la fecha en que ocurrió el accidente, 17 de febrero de 1953, la ley no le daba oportunidad al patrono no asegurado para subrogarse en los derechos del obrero y cobrar lo que él hubiera pagado como consecuencia de un accidente ocasionado por la culpa o negligencia de terceras personas. [1]

---

[1] Desde el 24 de junio de 1960 el poblema quedó resuelto afirmativamente por disposición expresa de la Ley de Compensaciones por Accidentes del Trabajo. En esa fecha, con vigencia inmediata, fue aprobada la Ley Núm. 96 de ese año que enmendó el Art. 15 de aquel estatuto. Desde entonces ese artículo, en su último párrafo, preceptúa:

"En los casos declarados no asegurados, en que el accidente surja debido a la negligencia de tercero, el patrono no asegurado que haya satisfecho al Fondo del Seguro del Estado el montante de la liquida-

Desde que se aprobó la ley se le confería, en su Art. 31, el derecho de subrogación al Fondo del Estado. Pero en ninguna de sus disposiciones originales ni en sus enmiendas posteriores, se prohibió al patrono no asegurado instar acción alguna, o intervenir en procedimientos, a los fines de resarcirse de lo pagado por él. A la fecha del accidente y de la muerte del obrero no carecíamos de disposiciones legales o de precedentes en nuestras decisiones para la solución de la cuestión aquí planteada por sus beneficiarios. ▪

En las materias que se rijan por leyes especiales, debe acudirse a ellas en primera instancia y, de haber deficiencias en las mismas, acudirse entonces al Código Civil y a otras leyes en *pari materia.*—Arts. 12 y 18, Código Civil, *Wood* v. *Tribunal de Contribuciones*, 71 D.P.R. 233, 235 (1950). El Art. 1112 del Código Civil es de aplicación.

En el caso de *Machado* v. *The Amer. R. R. Co. of P. R.*, 49 D.P.R. 843, resuelto el 28 de abril de 1936, encontramos una situación similar a la del presente caso. La Comisión Industrial de Puerto Rico había concedido a Juan Antonio Machado la cantidad de $1,350 por la pérdida de una pierna mientras se encontraba trabajando en su calidad de obrero de la Central Cambalache. El patrono pagó esta cantidad. En pleito promovido por el obrero lesionado contra la Amer. R. R. Co., solicitando indemnización por los daños sufridos en el mismo accidente, se levantó la cuestión respecto a la cantidad que tenía derecho el obrero a recibir. La extinta Corte de Distrito de Aguadilla resolvió que el obrero tenía

ción del caso, o haya asegurado su pago mediante el depósito de una fianza a satisfacción del Administrador, podrá subrogarse en los derechos del obrero para resarcirse de los gastos incurridos como consecuencia del accidente. El obrero o empleado o sus beneficiarios serán parte en el procedimiento que se estableciere con el fin de ejercitar la causa de acción que tengan contra el tercero o contra el patrono no asegurado, según sea el caso y cualquier suma que se recobrare en exceso de la suma satisfecha al Fondo del Estado por el patrono no asegurado para cubrir la liquidación del caso, se hará efectiva al lesionado, o a sus beneficiarios en caso de muerte, sin el consentimiento de los cuales ninguna transacción extrajudicial tendrá validez."

derecho a cobrar $1,800 como indemnización, pero deduciendo de esa suma la cantidad de $1,350 pagada por su patrono la Central Cambalache. Al suscitarse ante nos la cuestión de si la corte inferior en ello estuvo acertada, resolvimos, entre otras cosas, lo siguiente: ■

"Alega la demandada apelante que el artículo 112 del Código Civil, edición 1930, es aplicable al presente caso. Dispone este artículo que el que pagare por cuenta de otro podrá reclamar del deudor lo que hubiese pagado, a no haberlo hecho contra su expresa voluntad. Se arguye que la persona que satisfizo al obrero la compensación concedida por la Comisión Industrial ha quedado subrogada en sus derechos y que sólo ella está autorizada para promover esta acción. En nuestro sentir, la subrogación no limita el derecho del obrero para dirigirse contra el tercero culpable. Si por el hecho de la subrogación se prohibiese al obrero demandar a la tercera persona, el resultado sería que el tercero, culpable del acto torticero, quedaría relevado de satisfacer cualquier suma que hubiese tenido la obligación de pagar, en exceso de la satisfecha por el patrono, en caso de que hubiese sido directamente demandado por el obrero. En esta acción en que patrono y obrero son partes interesadas, la responsabilidad de la demandada debe ser una e indivisible, ya que no sería razonable someterla a las molestias e inconveniencias de dos acciones, una de parte del obrero y otra del patrono. Opinamos que cuando el obrero no ejercita la acción, el patrono puede hacerlo a su nombre, y que cuando la acción se ejercita por el obrero, el primero tiene derecho a intervenir. Quizá la mejor práctica sería que ambos se unieran para promover la acción.

"Es claro, en nuestro sentir, que la acción promovida por el demandante en este caso está permitida por la ley, sin que esto quiera decir que el obrero pueda enriquecerse recibiendo una doble indemnización por el mismo accidente. Si la cuantía de los daños y perjuicios excede de la compensación que obtuvo el obrero, de acuerdo con la ley por accidentes del trabajo, la persona que satisfizo esta compensación tendrá derecho a recibir una cantidad igual a la compensación pagada.

"  .    .    .    .    .    .    .    .

"En el caso de *Black* v. *Chicago Great Western R. Co.*, 174 N. W. 774, 780, se inició una acción por el obrero después

de haber recibido compensación de acuerdo con la ley de accidentes del trabajo. La corte confirmó el fallo de la corte inferior, expresándose así al terminar la opinión que emitiera en dicho caso:

"'Bajo las peculiares circunstancias demostradas, se devuelve el caso con la instrucción de que el patrono sea hecho parte, a fin de que cualquier compensación que haya sido pagada por él pueda ser deducida de la sentencia y satisfecha a él y el balance al demandante'." ▮

Se llegó a la misma conclusión en *Sucn. Sanabria* v. *White Star Bus Line, Inc.*, 50 D.P.R. 756 (1936) y *Castellano* v. *P. R. Beverages*, 74 D.P.R. 890 (1953). Tanto en estos dos casos como en el de *Machado*, aun cuando no hubiera estado envuelto el mismo estatuto, la decisión sobre el aspecto de la deducción o devolución en favor del patrono que había pagado anticipadamente por causa de un daño que otro había ocasionado y del cual era culpable, se inspiró en el principio de que nadie puede o debe enriquecerse injustamente recibiendo doble indemnización por el mismo accidente. Es decir, no deben concederse dos remedios separados por la misma lesión, uno a base de las obligaciones que al patrono no asegurado impone la Ley sobre Compensaciones por Accidentes del Trabajo y otro a base de la culpa o negligencia de un tercero con arreglo al Art. 1802 de nuestro Código Civil, aun cuando en la concesión de ambos existan algunos factores comunes. ▮

El antiguo y ya casi desechado principio de que en daños personales no tiene lugar la subrogación, invocado por los peticionarios en su hábil alegato, —corolario de la descartada doctrina de que la acción personal se extingue al morir su titular—no ha tenido entre nosotros vigencia. La regla general imperante es la de que "todos los derechos adquiridos en virtud de una obligación son transmisibles con sujeción a las leyes, si no se hubiese pactado lo contrario." Art. 1065, Código Civil. Ya sabemos que por su naturaleza o por disposición de ley, existen en el cuerpo de nuestro derecho posi-

tivo derechos y obligaciones denominados personalísimos, intransmisibles y que ni aun por el fenómeno sucesoral dan lugar a que entre en juego función subrogatoria alguna. Hasta ahora hemos considerado así, entre otros, el uso, la habitación, la patria potestad, los alimentos, la tutela, el testamento. ■■

La acción entablada por los beneficiarios del obrero contra los causantes o responsables de su muerte, era una personal. En *Porto Rico R. L. & P. Co.* v. *Corte de Distrito*, 38 D.P.R. 340, 349 (1928), dijimos:

"¿Puede equipararse el derecho a reclamar daños y perjuicios por lesiones sufridas por una persona a virtud de la culpa o negligencia de otra ya ejercitado en la corte y trabada la contienda, aunque no resuelto finalmente, al usufructo, al uso, a la habitación, a la renta vitalicia que estuviera disfrutando el finado, a la patria potestad, a los alimentos, a la tutela, o a las servidumbres personales? La pregunta debe contestarse en la negativa.

"No debe perderse de vista que se trata de una acción ejercitada. La persona que tenía el derecho demostró así su decidida voluntad de reclamarlo y lo reclamó en efecto ante los tribunales de justicia. Se le debía algo tan susceptible de cobro como si se tratara del producto de su trabajo personal o de daños causados a su propiedad.

"Siendo ello así ¿puede sostenerse que la acción muera con el reclamante? Repetimos que no, porque no se trata de algo que sea personalísimo que necesite de la vida natural de la persona para continuar ejercitándose.

"La obligación de la demandada surgió desde el momento de la ocurrencia del accidente. Fue exigible desde entonces y a su debido tiempo fue exigida. Cabe perfectamente dictar la sentencia reconociéndola a favor de los continuadores de la personalidad del primitivo reclamante como en el caso de cualquiera otra reclamación. Si a otra conclusión se llegara, el heredero del demandante, el que recibiría el beneficio que debió recibir el demandante, no serían sus descendientes, ascendientes o parientes colaterales, sino la propia persona que le causó el daño. Entre las contingencias del pleito favorables al demandado estarían las dilaciones porque dentro de ellas más probable sería la desaparición del demandante." ■■

En *Ojeda* v. *Fernández*, 32 D.P.R. 749 (1924), resolvimos que el derecho a reclamar daños por incumplimiento de contrato era trasmisible. Asi mismo en *Carlo* v. *Vargas*, 66 D.P.R. 407 (1946), resolvimos que ciertos derechos personales reservados contractualmente eran transmisibles. ■

Es cierto que, siguiendo el caso de *In re Burns*, 218 Mass. 8, 105, N.E. 601, en *Sucn. Bachier* v. *Comisión* de *Indemnizaciones a Obreros*, 33 D.P.R. 1016 (1925), resolvimos que el derecho de un obrero que reciba lesiones, a recibir compensación por su incapacidad, ya fuere temporal o permanente, era una acción personal que correspondía al obrero y cesaba con su muerte y no era transmisible a sus herederos. Pero en *Quiñones* v. *South P. R. Sugar Co. of P. R.*, 48 D.P.R. 351 (1935) y en *Montaner* v. *Comisión Industrial*, 55 D.P.R. 270 (1939), resolvimos lo contrario.

Hemos leído detenidamente el caso de *Crab Orchard Imp. Co.* v. *Chesapeake & O. Ry. Co.*, 115 F.2d 277, 312 U.S. 702, y los de *Mercer Casualty Co.* v. *Perlman*, 23 N.E.2d 502; y *Holland* v. *Morley Button Co.*, 145 Atl. 142, 83 N.H. 482. Ninguno de ellos es de aplicación al presente. El de *Crab*, que es una decisión federal y el más reciente de ellos, resuelto en noviembre de 1940, por la Corte de Circuito de Apelaciones, 4to. Circuito, decide que un patrono que ha satisfecho ciertos beneficios a los herederos de un obrero suyo fallecido, no tiene derecho a recobrar de una tercera persona cuya negligencia causó la muerte del obrero, excepto en el caso en que la lesión se haya llevado a efecto con la intención calculada de ocasionar daños al patrono en sus obligaciones contractuales. La muerte del obrero en ese caso ocurrió en el estado de West Virginia y en unas minas de carbón explotadas por el patrono y como consecuencia de la negligente operación de un ferrocarril perteneciente a la Chesapeake & O. Ry. Co. La decisión se fundamentó en la Ley sobre Compensaciones a Obreros por Accidentes del Trabajo de ese Estado, en lo resuelto por los tribunales del mismo en

la aplicación de esta ley y, además, en los principios del *Common Law* sobre subrogación. No obstante la naturaleza de su decisión, el tribunal federal, entre otras cosas, dijo:

"Aunque así pareciere, no necesariamente resulta que, —debido a que el empleado retenga el derecho a ejercer una acción de daños y perjuicios contra la tercera persona que le ocasionó daños, —el patrono que ha pagado compensación por dichos daños, no se subrogará en este derecho. Por consiguiente, aunque los casos de Mercer y Merrill tienen gran fuerza persuasiva, no existe en la Virginia Oriental autoridad directa que deniegue al patrono los beneficios de este derecho en equidad. Siendo este el caso, se hace necesario examinar las opiniones rendidas en otras jurisdicciones y los principios que reglamentan la subrogación en el Derecho Común.

"El profesor Vance, en su destacada obra, Insurance, 2da. edición, 1930, pág. 160, parece favorecer el punto de vista referente a que el patrono que ha compensado a su empleado bajo un estatuto que no provee para la subrogación, queda, no empece, investido con el derecho a subrogarse bajo la Ley Común. Este mismo punto de vista es compartido por el profesor Hardmann, mediante analogías con los seguros de fuego y marítimos. Véase, Hardmann, The Common Law Right of Subrogation Under Workmen's Compensation Acts, (1926), W. Va. L. Q. 183, 184."

*Por las razones expuestas debe confirmarse la resolución impugnada que dictó el Tribunal Superior de Puerto Rico, Sala de San Juan, en el caso arriba mencionado.*