José Juan Bardeguez, demandante y apelado, *v.* Rita María de los Angeles Bardeguez, demandada y apelante.

No. 6535.—*Sometido:* Abril 10, 1935. *Resuelto:* Junio 21, 1935.

714

*Pedro E. Anglade,* abogado del apelante; *F. Beiró Rovira,* abogado del apelado. .

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

En 25 de mayo de 1918 don Juan Bardeguez y Guibbs, viudo y de sesenta y un años de edad, sin haber tenido hijos legítimos ni legitimados, ni naturales reconocidos, adoptó mediante escritura pública otorgada ante el notario Celestino Domínguez, al demandante José Juan Bardeguez y a la demandada Rita María de los Angeles Bardeguez, cuando éstos alcanzaban la edad de veintitrés años el primero y veinticinco la segunda, como hijos legítimos suyos, autorizándoles para llevar su apellido y concediendo a ambos todos los derechos que tienen los hijos legítimos, adopción que fué debidamente aceptada por el demandante y la demandada, quienes antes de ser adoptados llevaban el apellido Gutiérrez. La citada adopción fué inscrita en el Registro de Guayama, donde nació el demandante, y en el de Ponce, donde nació la demandada, después de haber sido aprobada por la Corte de Distrito de Guayama. Encontrándose enfermo el adoptante Juan Bardeguez y Guibbs y en peligro inminente de muerte, y cono-

ciéndolo así, otorgó testamento de palabra, en el cual instituyó a la demandada Rita María de los Angeles Bardeguez como única y universal heredera de todos sus bienes. Este testamento fué aprobado en 2 de junio de 1930 por la Corte de Distrito de Guayama en procedimiento civil seguido ante la misma sobre protocolización de testamento otorgado en peligro inminente de muerte, habiendo sido protocolizado en el registro del notario de dicha ciudad Pedro E. Anglade, según consta de la escritura pública No. 32, otorgada en 5 de junio de 1930. El referido Juan Bardeguez y Guibbs, quien dejó al morir bienes muebles e inmuebles, omitió en la institución de herederos hecha en su mencionado testamento a su hijo adoptivo José Juan Bardeguez, sin haberlo desheredado expresamente. Alega el demandante que tiene derecho a heredar como heredero forzoso a su citado padre, en la mitad de todos sus bienes, correspondiéndole la otra mitad a la demandada. Basándose en estos hechos y en la ineficacia e inexistencia de la institución de heredero hecha a favor de la demandada, solicita el demandante que se le declare heredero forzoso en unión de su hermana, con cualesquiera otros pronunciamientos compatibles con sus alegaciones.

Los hechos esenciales de la demanda han quedado establecidos por las admisiones de la parte demandada, complementadas con la prueba producida en el juicio.

La corte inferior dictó sentencia declarando nula e inexistente la institución de herederos hecha a favor de la demandada Rita María de los Angeles Bardeguez por Juan Bardeguez y Guibbs, declarando además que tanto el demandante José Juan Bardeguez como la demandada Rita María de los Angeles Bardeguez en su carácter de hijos adoptivos de Juan Bardeguez y Guibbs deben ser considerados como herederos forzosos, con derecho a una participación igual en la herencia de su padre, y abriendo la sucesión intestada respecto a los bienes del referido causante, con imposición de

costas a la parte demandada, quien no conforme con la sentencia, interpuso el presente recurso de apelación.

Se alega en primer término que la corte de distrito cometió error al admitir en evidencia, sin estar debidamente identificados, unos autos que constituyen prueba secundaria, ya que la prueba primaria que ha debido ser aportada es la escritura de protocolización de testamento autorizada ante el notario Pedro E. Anglade.

La parte demandante ofreció como prueba copia del expediente tramitado ante la Corte de Distrito de Guayama para declarar testamento las manifestaciones hechas en peligro de muerte por Juan Bardeguez y Guibbs, que se encontraba archivada en dicho tribunal. La demandada se opuso, alegando que debía presentarse la escritura de protocolización. El Secretario de la corte de distrito declaró que tenía en su archivo la referida copia, porque los originales fueron entregados al notario para protocolizarlos en su notaría. Estos originales fueron entregados al notario por orden de la corte, la cual ordenó que se conservase copia literal de todos los documentos en los archivos del tribunal. En los autos obra un recibo del notario Sr. Anglade haciendo constar que dejó una copia del expediente archivada en el tribunal. Aun en el caso de que la copia de este expediente archivada en el tribunal no constituyese la mejor prueba, no comprendemos cómo su admisión pueda haber perjudicado a la parte demandada después de haber aceptado en su contestación de una manera expresa y categórica los hechos segundo, tercero y cuarto de la demanda, donde se alegan la adopción de las partes litigantes, con su consentimiento, por Juan Bardeguez y Guibbs, y las manifestaciones hechas por éste que fueron declaradas su testamento por la Corte de Distrito de Guayama. El hecho cuarto de la demanda, aceptado por la parte demandada, dice así:

"El citado padre adoptante de las partes en este pleito, don Juan Bardeguez y Guibbs, encontrándose enfermo de suma gravedad y en peligro inminente de muerte, y conociéndolo así, otorgó testamento de

palabra, en el cual instituyó a la aquí demandada como única y universal heredera de todos su bienes, testamento que fué aprobado en 2 de junio de 1930 por esta Hon. Corte, previo los trámites de rigor, en el procedimiento civil No. 8988 sobre protocolización de testamento otorgado en peligro inminente de muerte y en su consecuencia protocolizado en el registro del Notario de esta ciudad don Pedro E. Anglade, según consta de su escritura pública No. 32, otorgada en 5 de junio de 1930.''

Para probar estos hechos, aceptados por la demandada, fué que se presentó la copia del expediente obrante en el archivo de la Corte de Distrito de Guayama. Debe desestimarse este alegado error.

 Se alega en segundo término que la corte erró al declarar sin lugar la moción sobre indebida acumulación de causas de acción y eliminación. A juicio del apelante se alegaron dos causas de acción: la nulidad o inexistencia de la institución de herederos y la reclamación de bienes hereditarios. En la demanda se describen los bienes relictos al fallecimiento de Juan Bardeguez y Guibbs y se solicita que se declare ineficaz e inexistente la institución de herederos hecha a favor de la demandada, y herederos forzosos del causante don Juan Bardeguez y Guibbs a ambos litigantes de por mitad cada uno, con cualesquiera otros pronunciamientos compatibles con las alegaciones. La acción ejercitada se basa en la preterición por el testador de uno de los herederos. La participación del demandante en los bienes de la herencia es una consecuencia inevitable de cualquier sentencia que se dicte dejando sin efecto dicha preterición. No existe la indebida acumulación de acciones alegada por la parte demandada.

 Los errores tercero y cuarto se basan en que la sentencia es contraria a derecho y a la prueba practicada. Se alega que la intención del testador fué dejarle todos sus bienes a la demandadà, que éste fué su propósito deliberado y firme, y que debe respetarse su intención. Se arguye además que en ninguna parte del Código Civil se estatuye que los

hijos adoptivos tienen derecho a la herencia del adoptante, y se cita la ley de 9 de marzo de 1905, que en su artículo primero dice quiénes son herederos forzosos.

La opinión emitida por esta corte en *Ex parte Ortiz y Lluberas,* 42 D.P.R. 350, reconoce a los hijos adoptivos derechos hereditarios que le dan el carácter de herederos forzosos. En dicho caso las peticionarias solicitaron se les declarara únicas y universales herederas de su madre adoptiva Rosa Lluberas Rodríguez. A esta solicitud se opuso Arturo Lluberas Rodríguez, alegando que había sido declarado único y universal heredero de la referida Rosa Lluberas Rodríguez en un testamento ológrafo otorgado por la misma. La corte de distrito resolvió a favor de las hijas adoptivas. Las peticionarias fueron declaradas únicas y universales herederas de Rosa Lluberas Rodríguez, quedando sin efecto el testamento otorgado a favor de Arturo Lluberas Rodríguez. Esta corte confirmó la sentencia apelada en una opinión escrita por el Juez Asociado Sr. Wolf, de la cual extractamos lo siguiente:

"En varios estados de la Unión se aprobaron estatutos sobre adopción. Las leyes anteriores se referían a la distribución de la herencia o a otros extremos que daban ciertos derechos a los 'vástagos' (*issue*) o 'descendientes' (*descendants*) de un finado. Las cortes generalmente han resuelto que los hijos adoptivos deben ser por tanto considerados como vástagos o descendientes, aunque es claro que originalmente ninguna de estas palabras podía significar otra cosa que la prole. In re Newman, 75 Cal. 213; Batchelder v. Walworth, 37 L.R.A. (N.S) 849, casos citados e historia; Riley v. Day, 44 L.R.A. (N.S.) 296; Ross v. Ross, 129 Mass. 243; In re Hebb's Estate 134 Wash. 424; 1 R.C.L. 619; 11 C.J. 752; 1 C.J. 1398, par. 128. Todas estas autoridades tratan de la proposición principal. De igual modo, en Puerto Rico, donde el estatuto otorga el derecho de adopción, no es gran esfuerzo decir que la Legislatura quiso significar que la persona así adoptada cayera dentro del significado de heredero forzoso. Sujeto a restricción, se confiere al adoptivo el *status* de hijo legítimo.

"Conforme hemos dicho, el artículo 200 por sí mismo otorga derechos, y los artículos posteriores solamente fijan ciertas limitaciones sobre tales derechos, que, bajo el artículo 186 incluyen el derecho a

heredar. Consideramos que un estatuto sobre adopción debe ser interpretado liberalmente en favor del hijo adoptivo, al igual que se ha hecho en otras jurisdicciones. Bilderback v. Clark, 9 A.L.R. 1622; In re Hebb's Estate, 134 Wash, 424, 427; 1 R.C.L. 595.''

En su opinión este tribunal estudia la legislación vigente en Puerto Rico sobre adopción, llegando a la conclusión de que el hijo adoptivo tiene la condición de hijo legítimo del adoptante, debiendo considerarse como un heredero forzoso, sujeto a las restricciones impuestas por la ley.

Los litigantes son hijos adoptivos de Juan Bardeguez y Guibbs, quien murió siendo viudo, sin dejar ascendientes ni descendientes. El Sr. Juan Bardeguez, hallándose en peligro de muerte, expresó sus deseos de testar a varias personas que oyeron sus manifestaciones y comparecieron como testigos ante la Corte de Distrito de Guayama, cuyo tribunal, en posesión de toda la prueba, declaró que las manifestaciones del referido Juan Bardeguez y Guibbs constituían su testamento. El testador, según el resumen que de las declaraciones de los testigos hizo el referido tribunal, manifestó ''que testaba todo cuanto él poseía para su hija adoptiva Rita Bardeguez, quien quería el testador que fuese su heredera, y que el testador no tenía más herederos, recompensando así en lo buena que su mencionada hija adoptiva había sido para con él, toda vez que ella había sido para con el testador mejor que una hija propia.''

La preterición del demandante resulta manifiesta. Las palabras del testador no dejan lugar a dudas. Nada recibe en el testamento el hijo adoptivo por disposición del testador, quien además agrega que ''no tenía más herederos.''

Argumentando el tercer error sostiene la parte apelante que la Corte de Distrito de Guayama ha declarado equivocadamente en su sentencia que el demandante tiene en la herencia del causante los mismos derechos que la demandada. A juicio de ésta, el artículo 742 del Código Civil no ha sido correctamente interpretado, porque el testador ha expresado claramente su intención de dejar todos los bienes

de que podía disponer testamentariamente, de acuerdo con la ley, a su hija Rita. Se arguye que el testador, al manifestar que quería que todos sus bienes fuesen para su mencionada hija, lo que hizo fué mejorarla, legándole el tercio de libre disposición e instituyéndola heredera en la legítima corta de acuerdo con lo que estatuyen nuestras leyes, respetando los derechos legitimarios de cualquier otro heredero.

La corte inferior, al dictar su sentencia, parte de la base de que la institución de herederos es totalmente nula, de acuerdo con el criterio de Manresa, quien también cita las sentencias del Tribunal Supremo de España de 17 de junio de 1908 y 27 de febrero de 1909, que sostienen idéntica opinión y que interpretan el artículo 814 del Código Civil español, equivalente al 742 de nuestro código. 6 Manresa, 6a. ed., páginas 352 y 353. ¿Pero, es aplicable este artículo a los hijos adoptivos? He aquí la cuestión fundamental a resolver para determinar la participación que corresponde al demandante en los bienes relictos al fallecimiento de su padre adoptivo.

El referido artículo 742 dice en su primer párrafo así:

"La preterición de alguno o de todos los herederos forzosos *en línea recta,* sea que vivan al otorgarse el testamento o sea que nazcan después de muerto el testador, anulará la institución del heredero; pero valdrán las mandas y mejoras cuando no sean inoficiosas."

El artículo que antecede se refiere exclusivamente a los herederos forzosos en línea recta. El hijo adoptivo no lo es, y aunque de acuerdo con el código tiene los derechos de un hijo legítimo, sin perjuicio de los que correspondan a los herederos forzosos, los cuales subsistirán como si la adopción no se hubiese verificado, sin embargo, no creemos que esta disposición tenga el alcance de incluir al hijo adoptivo entre los herederos forzosos en línea recta que son los únicos que pueden obtener la anulación de la institución de heredero en la extensión que determina el artículo 742 del referido cuerpo legal.

En el caso de *Ernst* v. *Rivers,* 123 N. E. 93, 95, resuelto por la Corte Suprema de Massachusetts, se dice que *it is plain that "lineal heirs" means descendants.*

La Enciclopedia Jurídica Española expresa con mayor claridad el significado legal de estas palabras. Del tomo 21, pág. 457, de la citada obra, copiamos lo siguiente:

"Línea es la serie u orden de personas unidas en lazo de parentesco natural, por descender de una misma raíz o tronco. 'Ayuntamiento ordenado de personas que se tienen unas de otras como cadenas, descendiendo de una rayz, e facen entre sí grados de partidos.'' (L. 2a., título VI, pág. 4a.)

"Tiene su origen en el parentesco, cuya proximidad se determina por el número de generaciones, o sea por la distancia que media entre los parientes más inmediatos. Y así como la línea geométrica es una serie de puntos, o la trayectoria que descubre uno de ellos, en lo jurídico, siguiendo el proceso de la generación, cada una de las generaciones forma un grado, y la serie o conjunto de éstos, la línea.

"En Roma los grados de parentesco se computaban de diferente manera, según la línea: en la directa contando las generaciones, o bien contando las personas que habían entre los parientes en cuestión, prescindiendo de una. La relación de procedencia era fundamento de cognación. Cuando esa procedencia era directa, se decía que eran parientes en línea recta, y cuando la relación se daba en un tronco común, pero por mediación de genitores distintos, entonces formábase la *línea transversal.* Y en ésta se llamaba *bilateral* la cognación, cuando eran comunes los genitores, y los hermanos así nacidos se llamaban *germanos.* Y *unilateral,* cuando sólo hay común un genitor. La madre da lugar a la fraternidad uterina, el padre a la *consanguínea.*"

Como se ve, *línea* en derecho civil significa una serie u orden de personas unidas en parentesco natural que tiene su origen en la comunión de sangre y cuya procedencia se determina por el número de generaciones. Cuando la procedencia es directa, los parientes lo son en línea recta, por vínculos de consanguinidad y no por ninguna otra relación.

Bajo el subtítulo "Clases de Parentesco según el Derecho Actual", dice la Enciclopedia Jurídica Española, tomo 24, pág. 305:

"Admite una fundamental clasificación en *natural* y *civil* o *legal*, según tenga su origen en el hecho natural de la comunión de sangre, o en el fenómeno meramente jurídico de la adopción.

"El parentesco natural, llamado en latín *Consanguinitas, est vinculum personarum ab eodem stipite propinquo descendentium, vel quarum una descendit ab alici carnali propagatione* (5). Las Partidas lo definen: 'atenencia o aligamiento de personas departidas, que descienden de vna rayz (6).'

"La antigua distinción romana de agnación y cognación pierde su primitivo valor en el Derecho moderno por las modificaciones que el progreso del tiempo ha llevado al organismo familiar.

"Basado el parentesco natural en la comunidad de sangre, tiene su fundamento capital en la familia, que se constituye por medio del matrimonio, y éste se califica de parentesco natural *legítimo o mixto;* pero puede originarse también en unión extralegal y entonces tendremos el *parentesco puramente natural o ilegítimo,* que une los hijos naturales y los descendientes de los mismos a su padre o a su madre y a los descendientes de éstos."

El hijo adoptivo no puede, por lo tanto, considerarse como un heredero forzoso en línea recta por ser muy distintos los vínculos que lo unen a su padre por adopción. No pudiendo aplicarse el artículo 742, por tratarse de la preterición en el testamento de un hijo adoptivo, creemos que podemos acogernos al artículo 741, según el cual "el testador no podrá privar a los herederos de su legítima, sino en los casos expresamente determinados por la ley." No es éste un caso en que el testador haya dejado al heredero forzoso menos de la legítima que le corresponde. La legítima del heredero no ha sido menguada por disposición testamentaria y, por lo tanto, no son aplicables los artículos 743 y 744 del Código Civil. En el caso de autos el demandante ha sido completamente ignorado en su carácter de heredero. El testador aparece disponiendo de todos sus bienes en favor de su hija Rita, con menoscabo de la legítima que corresponde al demandante. Siendo ello así, es claro que debe dictarse sentencia dejando sin efecto el testamento en tanto en cuanto dispone de la legítima perteneciente al heredero ignorado.

Precisa determinar, sin embargo, cuál es la porción de los bienes que corresponde al demandante en concepto de legítima. De acuerdo con el artículo 737 del Código Civil, constituyen la legítima de los hijos y descendientes legítimos las dos terceras partes del haber hereditario del padre y de la madre. Sin embargo, podrán éstos disponer de una parte de las dos que forman la legítima para aplicarla como mejora a sus hijos y descendientes legítimos. La tercera parte restante será de libre disposición. El artículo citado divide el caudal hereditario en tres tercios, cada uno de ellos con naturaleza propia e independiente: uno que constituye la legítima estricta de los descendientes; otro del que puede disponer el testador libremente; y otro, que forma la mejora, que no puede nunca exceder del tercio de los bienes. 6 Manresa, 407. De modo que además del tercio de libre disposición, el testador puede disponer de un tercio más para aplicarlo como mejora. En el presente caso Juan Berdeguez y Guibbs manifestó que testaba todo cuanto él poseía para su hija Rita Berdeguez. Las palabras del testador claramente expresan su intención de dejar todos sus bienes a la mencionada heredera. Para cumplir en cuanto sea posible con su voluntad debe asignársele a la referida heredera todos aquellos bienes de que el testador tuvo autoridad para disponer con arreglo a ley. No hay duda de que pudo disponer del tercio de libre disposición y de otro tercio más en concepto de mejora. Manresa dice que el artículo 813 del Código Civil español, equivalente al 741 de nuestro código, edición 1930, sólo se refiere a la legítima estricta. 6 Manresa, 399. Nos parece acertado este criterio, porque ésta es la única porción de la cual no puede privar el testador a un heredero forzoso. Si se expresa en el testamento de una manera clara y precisa que se dejan todos los bienes a uno de los herederos, con preterición de otro, parece natural que de todos esos bienes se excluya únicamente la legítima estricta, que es la única porción de los mismos de que el testador no puede privar al legitimario,

y que el resto vaya al heredero favorecido por la voluntad del testador.

El artículo 755 del Código Civil dispone que la manda o legado hecho por el testador a uno de los hijos o descendientes no se reputará mejora sino cuando el testador haya declarado expresamente ser ésta su voluntad o cuando no quepa en la parte libre. De manera que hay dos casos en que la manda o legado puede reputarse como mejora: cuando el testador haya declarado expresamente ser ésta su voluntad, o cuando no quepa en la parte libre. En el caso de autos el testador dispuso de todos sus bienes en favor de su hija. El todo, como es natural, no puede caber en la parte de libre disposición. Excluída la legítima estricta perteneciente al demandante, parece natural que aquella parte que no cabe en el tercio de libre disposición le corresponda a la hija en concepto de mejora. Si el testador quiso favorecer a su hija con todos sus bienes, con exceso de las atribuciones concedidas por la ley, hay que convenir en que fué mucho más allá de lo permitido, salvando los límites de la mejora para penetrar en el campo vedado de la legítima estricta. Y si es así y su intención resulta clara y manifiesta, su última voluntad debe respetarse en todo lo posible, anulándose únicamente el testamento en tanto en cuanto afecta la legítima estricta del heredero.

Comentando el artículo 828 del Código Civil español, equivalente al 755 de nuestro código, dice Manresa:

"Nosotros creemos que siendo el 828 especial, ha de aplicarse en el caso a que se contrae con preferencia al 820, que es general. 'Cuando no quepa en la parte libre', dice aquel artículo. La cuestión es, por lo tanto, sencilla y por eso decimos que no hay verdadera contradicción. ¿Cabe el legado hecho al descendiente en la parte libre, teniendo en cuenta, en su caso, los demás legados? Siempre que no quepa, se entiende que el testador quiso mejorar. Se funda el artículo en la presunta voluntad del testador; no quiso éste que se quitase a los legatarios extraños lo que voluntariamente les legó mientras cupiese en el tercio, sino que pudiendo disponer además de otro tercio entre sus descendientes, debe suponerse que usó de esa facultad.

Lo contrario es quebrantar la voluntad libremente expresada del testador en la parte cuya disposición se le permite, en obsequio de los legitimarios, que contra dicha voluntad sólo pueden pretender su legítima estricta.

"El caso más claro de aplicación del artículo 828 es el siguiente: Lego el tercio de mis bienes a Juan, Pedro y Antonio; lego otro tercio a mi hijo José, y en el resto instituyo por herederos a todos mis hijos. ¿Se pretenderá, porque no hay mejora expresa, que se unan ambos legados para reducir a un sexto el de los extraños? ¿No resulta clara la intención del testador de mejorar a su hijo José? Pues un caso idéntico es el expresado antes, aunque no se hable de tercios. 6,000 se legaron a extraños, y pudieron legárseles, 6,000 se legaban al descendiente, y cabían en el tercio de mejora. Eso quiso el testador; ¿pudo hacerlo? ¿Puede cumplirse? Pues se cumple, esto es todo." 6 Manresa, 437.

*Debe revocarse la sentencia apelada y dictarse otra en su lugar dejando sin efecto el testamento en tanto en cuanto dispone de la legítima estricta a que tiene derecho el demandante, sin especial condenación de costas.*

El Juez Asociado Sr. Aldrey disintió.*