CARLOS TOMÁS FELICIANO SUÁREZ, ANA SUÁREZ JANER, SANDRA FELICIANO SUÁREZ, Ex parte, peticionarios.

*Número:* RE-85-537 *Resuelto:* 3 de junio de 1986

---

*Wilfredo Luciano Quiñones,* abogado de los recurrentes.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Se nos presenta en este caso una cuestión novel en esta jurisdicción: si son transmisibles a los herederos de un coadoptante los derechos otorgados por el Art. 138 del Código Civil que permite que se le reconozcan al hijo adoptado antes de 1947 todos los derechos sucesorios de los herederos naturales.

## I

La recurrente Sandra Feliciano Suárez fue adoptada por la copeticionaria Ana Suárez Janer y el ya fallecido Tomás Feliciano Resto el 19 de septiembre de 1946. La adopción fue aprobada por el Tribunal de Distrito, mediante resolución dictada al efecto el 5 de diciembre de 1946.

El coadoptante Tomás Feliciano Resto falleció el 26 de noviembre de 1968. En el caso 69-1859, ventilado ante el Tribunal Superior de Puerto Rico, Sala de Caguas, fueron declarados herederos de éste, Sandra Feliciano Suárez, Carlos Tomás Feliciano Suárez y Ana Suárez Janer. Todos acuden ante nos en calidad de peticionarios.

Los promoventes desean que Sandra Feliciano Suárez sea considerada como hija adoptada con todos los derechos que se reconocen desde 1947. A tales efectos presentaron una solicitud conforme lo dispuesto en el Art. 138 del Código Civil: "Las adopciones celebradas bajo la legislación anterior se regirán por dicha legislación y surtirán todos sus efectos según la misma, sin limitación de ningún género; disponiéndose, que las partes que intervinieron originalmente en una adopción verificada con anterioridad a la vigencia de esta Ley, podrán recurrir al Tribunal Superior mediante petición a los efectos de que la adopción ya celebrada se rija por las disposiciones

de esta Ley. El Tribunal podrá aprobar la petición para que ésta surta efecto y tenga validez." 31 L.P.R.A. sec. 539.

El Tribunal Superior de Puerto Rico, Sala de Bayamón, entendió que la ausencia del fallecido coadoptante Feliciano Resto le privaba de autoridad para conceder el remedio solicitado, ya que éste era un *interventor original* en una adopción verificada con anterioridad a la aprobación del Art. 138 del Código Civil. Desestimó la acción motu proprio el 26 de agosto de 1985. Los peticionarios acuden ante nos mediante solicitud de revisión.

Luego de evaluar el escrito de revisión, entendemos que se debe prescindir de posteriores procedimientos y resolver la controversia conforme la Regla 50 de nuestro Reglamento.

## II

En nuestro ordenamiento la adopción es un acto jurídico solemne mediante el cual se sustituye totalmente el parentesco familiar biológico o natural de una persona por otro en un procedimiento judicial rigurosamente reglamentado, tanto por el Código Civil, Arts. 130–138 (31 L.P.R.A. secs. 531–539), como por el Código de Enjuiciamiento Civil, 32 L.P.R.A. secs. 2691–2698. Manresa define la adopción como un acto "en virtud del cual la voluntad de los particulares, con el permiso de la ley y la autorización judicial, crea entre dos personas, una y otra naturalmente extrañas, relaciones análogas a las de la filiación legítima". J. M. Manresa, *Comentarios al Código Civil Español*, 7ma ed. rev., Madrid, Ed. Reus, 1957, T. II, pág. 112.

Casi todos los pueblos han conocido esta institución, convirtiéndola en recurso ofrecido por las leyes y sancionado por la religión para aquel que no tenía heredero natural, con el propósito de perpetuar su descendencia y garantizar la continuidad de su familia. En esos casos "constituía una forma, la única posible, del derecho de testar". J. Castán Tobeñas,

*Derecho civil español, común y foral,* 8va ed., Madrid, Ed. Reus, 1966, T. V, Vol. 2, pág. 211.

Sus orígenes históricos son antiquísimos. Fue regulada por los babilonios en el Código de Hammurabi, por los hebreos y los griegos. Sin embargo, fue en el Derecho romano que alcanzó una ordenación sistemática con dos formas distintas: "la *adoptio*" y "la *adrogatio*". Manresa, *op. cit.*, págs. 106–107. Su propósito inicial era evitar la extinción de la familia, y utilizarla para fines económicos, sociales y políticos. Fue modificada en la época de Justiniano de una "institución basada en la continuidad de los consorcios familiares y cuyos beneficios recaían principalmente sobre el adoptante . . . [a] una institución ordenada en favor casi exclusivo del adoptado". Castán, *op. cit.*, pág. 213. Véanse: E. González Tejera, *Derecho Sucesorio Puertorriqueño*, San Juan, Ed. Ramallo, 1983, Vol. 1, pág. 75; J. L. Lacruz Berdejo, *Derecho de Familia*, Barcelona, Ed. Bosch, 1966; H. H. Clark, *The Law of Domestic Relations in the United States*, St. Paul, Minnesota, West Pub. Co., 1968, págs. 602–603; L. A. Huard, *The Law of Adoption: Ancient and Modern*, 9 Vand. L. Rev. 743, 747 (1956); J. F. Brosnan, *The Law of Adoption*, 22 Colum. L. Rev. 332 (1922).

Las leyes modernas tienden en general a facilitar la adopción y a otorgarle más amplios efectos con el propósito de integrar al hijo adoptivo en la nueva familia. En la mayoría de los países, entre ellos Puerto Rico, se reconoce una integración plena y total del hijo adoptivo con la familia del adoptante.[1] Sin embargo, los modos de efectuar la adopción va-

---

[1] En los siguientes países se reconocen dos tipos de adopciones, la plena, con integración total y la menos plena o limitada, que no provee para la integración total: Francia, Código Civil, Arts. 343–370; España, Código Civil, Arts. 172–180; Italia, Código Civil, Arts. 291–314; Argentina, Ley de Adopción, Arts. 14–29. En Inglaterra y en la Unión Soviética hay un sólo tipo de adopción en la que se integra el adoptado a la familia del adoptante. Véanse: 24 *Halsbury's Laws of England* 290–291, párr. 629–630 (4ta ed. 1979); *The Soviet Legal System: Selected Contemporary Legislation and*

rían. En algunos países se hace mediante un contrato entre las partes que requiere autorización judicial, mientras que en otros se realiza mediante un acto gubernamental a través de una agencia administrativa o de los tribunales. Véase IV *International Encyclopedia of Comparative Law* Cap. 6, Secs. 177–186 (1976).

■ Puerto Rico tiene una de las legislaciones más avanzadas y liberales de todos los países de Occidente. Aunque tiene los mismos objetivos que el Código Uniforme de Adopción (*Uniform Adoption Act*) su redacción es distinta. *Ex parte J. A. A.*, 104 D.P.R. 551 (1976) ; *Rivera Coll* v. *Tribunal Superior*, 103 D.P.R. 325 (1975). En junio de 1953 adoptamos la legislación vigente, Leyes Núm. 85 y Núm. 86 de 1953 (32 L.P.R.A. secs. 2691–2698 y 31 L.P.R.A. secs. 531–539, respectivamente). Su espíritu es claramente autóctono y protector del bienestar del hijo adoptivo:

> Este anteproyecto va encaminado hacia la protección del niño, cuidando de que no se le separe indebidamente de sus padres, cuando pueda permanecer con ellos si les da la debida orientación y ayuda; proteger al niño, evitando que sea adoptado por personas incapacitadas para asumir la responsabilidad que conlleva criar y educar a un hijo; protegerlo, además, evitando toda intervención de los padres biológicos que tienda a obstaculizar la adaptación del niño en el hogar adoptivo. Proteger, asimismo, a los padres biológicos, orientándolos adecuadamente para evitar que tomen determinaciones apresuradas respecto a sus hijos, quizás bajo el peso de problemas o situaciones que podría ayudárseles a resolver, y en esta forma hacerles posible conservar sus hijos. Proteger

---

*Documents* (W. E. Butler, Trad.), Nueva York, Oceana Pubs., 1978, pág. 459, Arts. 24–25. En Estados Unidos, cada jurisdicción estatal reconoce efectos diversos a la adopción, aunque en la actualidad hay una tendencia hacia una mayor integración. H. H. Clark, *The Law of Domestic Relations in the United States*, St. Paul, Minnesota, West Pub. Co., 1968, págs. 658–659.

también a los padres adoptivos, ofreciéndoles información sobre los factores que determinan la capacidad del niño para desarrollarse física y mentalmente, y garantizándoles además que ningún pariente del niño adoptado intervendrá con ellos, en lo que se refiera al niño. 2 Diario de Sesiones de la Asamblea Legislativa (Cámara), T. 2, pág. 1291 (1953).

En el debate, varios legisladores expresaron claramente que la importancia del proyecto era darle a niños sin padres la oportunidad de criarse en un hogar donde los pudiesen atender debidamente. Igualmente se quiso facilitar a los padres sin hijos la oportunidad de tenerlos y asegurar la continuidad de su familia. Al discutirse el proyecto el entonces representante señor Polanco Abreu explicó el alcance de la legislación:

> El propósito de la adopción, tal como lo entiende la Comisión, es proveer, es dar padres a niños que no los tienen, o cuyos padres no los quieren, o no los pueden atender debidamente. En estos casos, los padres adoptivos pasan a ser los sustitutos de los padres biológicos.
>
> La Comisión entiende también, que la adopción no es un acto de caridad hacia los hijos menos afortunados. La Comisión entiende que la adopción es una institución de carácter esencialmente social que debe mejorarse en nuestros estatutos. Diario de Sesiones (Ordinaria), *op. cit.*, pág. 1292.

### III

Al aprobarse en Puerto Rico el Código Civil de 1902 se derogó expresamente el Art. 177 del Código Civil español que regía y disponía que el hijo adoptivo no adquiriría derecho alguno a heredar de su adoptante, en ausencia de un pacto en contrario en la escritura de adopción.[2] *Sosa* v. *Sosa*, 66

---

[2] Dicho artículo disponía lo siguiente:
"El adoptante no adquiere derecho alguno á heredar al adoptado. El adoptado tampoco lo adquiere á heredar, fuera de testamento, al adoptante, á menos que en la escritura de adopción se haya éste obligado á instituirle

D.P.R. 606, 609 (1946). Esa disposición fue sustituida por los siguientes artículos, Arts. 202 y 203, respectivamente, del Código Civil de 1902. (³)

> *Art. 132.*—La adopción no perjudicará en ningún caso los derechos que correspondan a los herederos forzosos, y que subsistirán como si la adopción no se hubiese verificado.

> *Art. 133.*—El adoptado tendrá en la familia del adoptante los derechos y deberes y la consideración de un hijo legítimo, con la excepción establecida en el artículo anterior.

Dicha legislación constituyó el primer intento de liberalizar la institución de la adopción en nuestro país para que el hijo adoptivo heredara de los adoptantes, *Sosa* v. *Sosa,* supra, pág. 610:

> La derogación del artículo 177, y la sustitución de disposiciones que dan al adoptado los derechos en la familia de un hijo legítimo, sin perjuicio de los derechos de los herederos forzosos, constituyen una expresión clara de la intención legislativa de abandonar el principio expresado en el código español, tan reñido con el concepto histórico de la adopción, de que el adoptado ningún derecho a la herencia adquiere (en ausencia de contrato), y abrazar el principio tan típico de la adopción, de que el adoptado adquiere derechos en la herencia.

A pesar de la intención legislativa de mejorar los derechos de los hijos adoptados, hubo muchas dificultades en la inter-

---

heredero. Esta obligación no surtirá efecto alguno cuando el adoptado muera antes que el adoptante. El adoptado conserva los derechos que le corresponden en su familia natural á excepción de los relativos á la patria potestad." Art. 177, *Código Civil español vigente en la Península, Cuba, Puerto Rico y Filipinas,* anotado por A. García Moreno, 7ma ed., Madrid, Centro Edit. de Góngora, 1898, pág. 114.

(³) Estos artículos no tenían precedente en el Código Civil español, ya que fueron tomados del Art. 214 del Código Civil de Luisiana de 1870. *Valladares de Sabater* v. *Rivera Lazú,* 89 D.P.R. 254, 258–259 (1963); L. Muñoz Morales, *Anotaciones al Código Civil de Puerto Rico,* 10 Rev. Jur. U.P.R. 411, 415 (1941).

pretación de estos artículos. (⁴) Como resultado surgieron muchas preguntas sobre el alcance de su protección. (⁵)

■ Por eso en el caso de *Sosa* v. *Sosa,* supra, el Juez Asociado Señor Todd, en su opinión disidente, solicitó a la Asamblea Legislativa que enmendara los artículos pertinentes. Ibíd., pág. 622. Mediante la Ley Núm. 353 de 13 de mayo de 1947, Leyes de Puerto Rico de 1947, pág. 681, como consecuencia directa de dicha opinión, se derogó el Art. 132 y se enmendó el Art. 133 para que leyera "[e]l adoptado tendrá en la familia del adoptante los derechos y deberes y la consideración de un hijo legítimo", eliminándose la reserva del texto hasta entonces vigente en el sentido de no perjudicar los derechos de los herederos forzosos. Con dicha ley se equipararon los derechos hereditarios del hijo adoptivo con los de un hijo biológico.

■ Esa legislación quedó en vigor hasta la aprobación de la Ley Núm. 86 de 15 de junio de 1953. Con ésta se logró integrar plenamente, para todos los efectos legales, al adoptado con la familia del adoptante. Se dispuso, además, que al formalizarse una adopción se terminan todos los derechos, deberes y obligaciones del adoptado con su familia natural o con

---

(⁴)Véanse: *Ex parte Ortiz y Lluberas,* 42 D.P.R. 350 (1931) ; *Bardeguez* v. *Bardeguez,* 48 D.P.R. 713 (1935) ; *Sosa* v. *Sosa,* 64 D.P.R. 769 (1945) ; *Lugo, Ex parte; Ortiz, Etc., Opositoras,* 64 D.P.R. 868 (1945) ; *Sosa* v. *Sosa,* 66 D.P.R. 606 (1946) ; *Ginés* v. *Ayala Rodríguez,* 84 D.P.R. 245 (1961) ; *Valladares de Sabater* v. *Rivera Lazú,* 89 D.P.R. 254 (1963).

(⁵)". . . ¿Cuáles son los derechos de los herederos forzosos que la adopción no podía perjudicar? ¿La participación de los legitimarios en la legítima estricta, en la legítima larga, en la totalidad del caudal? ¿Hacía diferencia el hecho de que el causante falleciera con testamento o sin él? ¿Qué sucedía cuando el hijo adoptado concurría con descendientes legítimos, con ascendientes, con el cónyuge supérstite, con hijos naturales reconocidos, con éstos e hijos legítimos y legitimados? ¿Qué sucedía cuando el adoptante otorgaba testamento dejando sus bienes a un heredero voluntario, ignorando al hijo adoptivo?" E. González Tejera, *Derecho Sucesorio Puertorriqueño,* San Juan, Ed. Ramallo, 1983, Vol. I, pág. 78.

su anterior familia adoptiva, y los de éstos con el adoptado. ([6])
Arts. 132–133 del Código Civil, 31 L.P.R.A. secs. 533–534;
*Rivera Coll* v. *Tribunal Superior*, supra.

 Ambas legislaciones, la de 1947 y la de 1953, termi-
naron con la incertidumbre sobre los derechos hereditarios de
los adoptados después de 1947. En cuanto a los adoptados
antes de dicha fecha, aplicaría la legislación anterior a menos
que los adoptantes acudieran al tribunal y solicitaran que se
les aplique la nueva ley. Art. 138 del Código Civil, 31 L.P.R.A.
sec. 539; González Tejera, *op. cit.*, págs. 78–79. ([7]) Es en ese
contexto que surge la controversia del presente caso: si en
ausencia, por muerte, de uno de los coadoptantes originales
sus herederos pueden solicitar conjuntamente con el otro co-
adoptante que una adopción bajo la anterior legislación se rija
bajo la actual ley en cuanto a sus efectos; o expresado en otra
forma: si el derecho que concede el Art. 138 es transmisible a
los herederos de un adoptante.

## IV

 La sucesión, ya sea testada o intestada, es una de
las formas o medios de adquirir y transmitir la propiedad y
demás derechos y obligaciones del causante. Art. 549 del Có-
digo Civil, 31 L.P.R.A. sec. 1931. Por tal razón, dentro de la
cuidadosa organización del Código Civil, su regulación ha sido

---

([6]) En 1947 no se derogó el Art. 137 del Código Civil mediante el cual
el adoptado conservaba los derechos que le correspondían en su familia na-
tural, a excepción de los relativos a la patria potestad, produciendo la ano-
malía de que un hijo adoptivo podía heredar tanto de la familia natural
como de la adoptiva. Dicha situación fue corregida en 1953 mediante el
Art. 133.

([7]) En la opinión disidente del Juez Belaval, en *Gines* v. *Ayala Rodrí-
guez*, supra, éste expresó que la Ley Núm. 353 de 13 de mayo de 1947 era
de carácter interpretativo de la ley anterior, que tenía efectos retroactivos,
y era una ley mediante la cual se aclaraban los derechos hereditarios de los
hijos adoptivos equiparándolos a los legítimos, que hubiesen sido adoptados
antes de 1947 o después. En apoyo de dicha posición véase González Tejera,
*op. cit.*, págs. 86–88. Dicho argumento no ha sido levantado ante nos.

incluida en el Libro III que trata de los diferentes modos de adquirir la propiedad. Mediante ésta se transmiten a los herederos los derechos y obligaciones del difunto. Arts. 599–610 del Código Civil, 31 L.P.R.A. secs. 2081–2092; *Cabassa* v. *Registrador*, 116 D.P.R. 861 (1986). Esto responde a que nuestro Derecho Sucesorio, que tiene como base el Derecho Romano, se funda en el criterio de que "la posición jurídica que ocupaba el causante se mantendrá en lo posible inalterable, a base de colocar en su lugar al heredero". J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1975, T. V, Vol. 1, pág. 11. Por tal razón "aparece justificado afirmar que, más que de un fenómeno de adquisición, se trata de una de sustitución de titular", íd., pág. 22, o de continuación de su personalidad. *Sucesión Dávila* v. *El Registrador de la Propiedad*, 15 D.P.R. 669, 673 (1909). Pero no en todos los derechos se da la sustitución o continuación. Hay ciertos derechos de la personalidad y de la relación familiar que son intransmisibles al igual que algunos derechos patrimoniales de duración vitalicia y otros de carácter público. ([8]) Castán, *op. cit.*, 1978, T. VI, Vol. 1, pág. 33; Manresa, *op. cit.*, 1972, T. V, pág. 419. Constituye la regla general la transmisibilidad de "todos los elementos integrantes del patrimonio de una persona fallecida". González Tejera, *op. cit.*, pág. 247. Puig Brutau, *op. cit.*, págs. 242–248.

De conformidad con dichos principios, nuestra jurisprudencia ha reconocido en múltiples ocasiones la transmisibilidad de distintas relaciones jurídicas, rechazando así la máxima *actio personalis moritur cum persona*, por ser incom-

---

([8]) Entre otros: deberes y derechos de la patria potestad, 31 L.P.R.A. sec. 631(1); alimentos entre parientes, 31 L.P.R.A. secs. 568 y 569(1); la acción del donante para revocar una donación por causa de ingratitud si no la ejercitó mientras pudo, 31 L.P.R.A. sec. 2050; usufructo, 31 L.P.R.A. sec. 1571(1); uso y habitación, 31 L.P.R.A. secs. 1596 y 1604; mandato, 31 L.P.R.A. sec. 4481; los derechos del comodatario cuando el préstamo se haya hecho en contemplación de su persona, 31 L.P.R.A. sec. 4522.

patible con el principio de que el heredero es el continuador de la persona jurídica del finado. Hemos expresado, además, que aunque existen ciertos derechos personalísimos que se extinguen con la muerte, existen otros que, aunque tienen su origen en la relación familiar, se transmiten a los herederos para su posible ejercicio. *Vda. de Delgado* v. *Boston Ins. Co.*, 101 D.P.R. 598, 603 (1973); *Robles Menéndez* v. *Tribunal Superior*, 85 D.P.R. 665, 672–673 (1962); *Silva* v. *Doe*, 75 D.P.R. 209, 215–218 (1953); *Arroyo* v. *Fernández*, 68 D.P.R. 514, 517 (1948); *Sosa* v. *Sucn. Morales*, 58 D.P.R. 360, 363–364 (1941).

 Entre los derechos que pueden ejercer los herederos a la muerte del causante se encuentra el de "reconocer de cualquier modo a sus hijos [del difunto], expresa o tácitamente". *Ocasio* v. *Díaz*, 88 D.P.R. 676, 749 (1963). Mediante dicho reconocimiento, no sólo se adquiere el vínculo familiar con el causante, sino también plenos derechos hereditarios. Pudiendo los herederos ejercer el derecho de reconocimiento con todas sus consecuencias, no vemos cómo se les puede negar el derecho del Art. 138 para lograr que a una persona que fue adoptada por su causante, y por consiguiente *forma parte de su grupo familiar*, se le concedan plenos derechos hereditarios bajo la actual legislación de adopción. [9] Negar ese derecho a los herederos sería contrario a la intención legislativa de lograr una igualdad en los derechos hereditarios de los hijos adoptivos, mediante el mecanismo del Art. 138 y del principio de hermenéutica de que los estatutos de adopción deben interpretarse liberalmente a favor del hijo adoptivo.

 Por otro lado, el derecho reclamado es de contenido puramente económico, pues la persona adoptada ya adquirió el vínculo familiar y lo único que adquiriría serían plenos de-

---

[9] Habiendo sido los peticionarios recurrentes declarados herederos, nada impedía que ellos se distribuyeran la herencia de la forma que tuvieron por conveniente. Art. 1011 del Código Civil, 31 L.P.R.A. sec. 2877.

rechos hereditarios. Por lo tanto, por no haberse limitado la transmisión hereditaria de ese derecho y no estar dentro de las excepciones a la norma general de transmisibilidad de los derechos del causante, debe reconocerse el derecho de los herederos a llevar la acción provista por el Art. 138 del Código Civil y así terminar con una incomprensible distinción en cuanto a los derechos hereditarios de las personas adoptadas antes de 1947.

Por los fundamentos expuestos, *debe revocarse la sentencia recurrida.*

El Juez Presidente Señor Pons Núñez se inhibió.