Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| REFRICENTRO, INC. Y OTROS **Apelado** <br><br> V. <br><br><br> JOSÉ C. HERNÁNDEZ GARCÍA Y OTROS **Apelante** | KLAN202301058 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan <br><br> Civil. Núm. SJ2022CV02075 <br><br> Sobre: Entredicho Provisional, Injunction Preliminar y Permanente |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

**Hernández Sánchez, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 24 de enero de 2024.

El Sr. José C. Hernández García, el Sr. Frank Palacio Rodríguez, el Sr. Carlos M. Vento Torres, el Sr. Luis E. Lago Marrero y Refricentro, Inc. (en conjunto, los apelantes) comparecieron ante nos mediante un recurso de *Apelación* y solicitaron la revisión de una *Sentencia Parcial* que se emitió el 15 de septiembre de 2023 y se notificó el 18 de septiembre de 2023 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante el aludido dictamen, el TPI resolvió lo siguiente: (1) declaró Ha Lugar a la *Solicitud de Sentencia Sumaria Parcial* que presentó la sucesión del Sr. Pedro Arvesú Gasset (señor Arvesú Gasset), compuesta por la Sra. Teresa Irma López Arias, el Sr. Pedro Arvesú López y la Sra. Irma Arvesú López (en conjunto, sucesión Arvesú) **el 16 de noviembre de 2022**; (2) declaró No Ha Lugar la *Solicitud de Sentencia Sumaria Parcial* que presentó la sucesión Arvesú **el 28 de febrero de 2023**; y, por último, (3) declaró No Ha Lugar y ordenó la desestimación con perjuicio de la *Reconvención* que presentaron los

apelantes el 13 de abril de 2022 en el caso civil núm. SJ2022CV02075.

Por los fundamentos que expondremos a continuación, **modificamos** el dictamen recurrido y así modificado **confirmamos**.

I.

El 17 de marzo de 2022, Refricentro, Inc., el Sr. Pedro Arvesú Gasset, el Sr. Pedro Arvesú López, Cirilo Hernández Hernández, LLC, el Sr. Cirilo C. Hernández Hernández, la Sra. Martha M. Padrón Hernández y el Sr. Javier Hernández (en conjunto, los demandantes) presentaron una *Demanda y Petición de Entredicho Provisional, Injunction Preliminar e Injunction Permanente* al amparo del Art. 677 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3423, y la Regla 57 de Procedimiento Civil, 32 LPRA Ap. V, R.57, en contra del Sr. José Cirilo Hernández García, el Sr. Frank Palacio Rodríguez, el Sr. Carlos M. Vento Torres, y el Sr. Luis E. Lago-Marrero.[1]

En esencia, alegaron que el 24 de marzo de 2022, se celebró la Asamblea Anual de Accionistas de Refricentro, Inc. con el propósito de escoger a los nuevos oficiales y directores de dicha compañía. Adujeron que el 79.16% de los accionistas tenedores estaban presentes en dicha asamblea y escogieron a las siguientes personas para ocupar los puestos de la Junta de Directores: (1) Pedro Arvesú López; (2) Martha M. Padrón Hernández; (3) Irma Arvesú López; (4) Josefina Barrera; y por último, (5) Javier Hernández. Sin embargo, argumentaron que los demandados le impidieron a los presuntos nuevos oficiales y directores a tener acceso a las instalaciones corporativas y, por ende, le negaron acceso a sus libros y haberes. Ello, a pesar de que, según estos, la selección de los oficiales y directores nuevos se había decretado

---

[1] Véase, págs. 1-13 del apéndice del recurso.

mediante una Resolución aprobada por la mayoría de los accionistas de dicha entidad.

En virtud de lo antes expuesto, sostuvieron que el recurso de *injunction* era el mecanismo adecuado para detener las presuntas violaciones fiduciarias de la parte demandada. Por otro lado, solicitaron la cantidad de un millón ($1,000,000.00) de dólares por concepto de daños presuntamente causados a raíz de la denegatoria del acceso a los documentos oficiales y a las facultades administrativas de dicha entidad. Por estos motivos, le solicitaron al TPI a que declarara Con Lugar la *Demanda* y le concediera los remedios solicitados.

Luego de varios trámites procesales, el 13 de abril de 2022, los apelantes presentaron su *Contestación Enmendada a la Demanda y Reconvención Enmendada.* [2] En síntesis, argumentaron que los demandantes incumplieron con los reglamentos y las obligaciones corporativas que estos tenían y, en consecuencia, no podían tomar control de Refricentro, Inc. Particularmente, señalaron que los demandantes pretendían escoger a personas que no eran accionistas de la corporación para que ocuparan los puestos de oficiales de la Junta Directiva. Asimismo, entre otras cosas, indicaron que varios de los accionistas estaban incapacitados mentalmente para llevar a cabo negocios jurídicos. Por otra parte, sostuvieron que la asamblea que se celebró el 14 de marzo de 2022 nunca fue reconocida por la Junta de Directores ni la gerencia de la mencionada corporación. Consecuentemente, razonaron que las alegaciones de la *Demanda* eran insuficientes y no conferían derecho a remedio alguno.

Por último, señalaron que la presente *Demanda* era la tercera que se presentaba en Puerto Rico sobre la misma controversia.

---

[2] Íd., págs. 35-69. La *Contestación a la Demanda y Reconvención* original, es decir, previo a ser enmendada, se presentó el 28 de marzo de 2022.

Particularmente, les hicieron referencia a los siguientes casos: (1) caso civil núm. SJ2021CV07318, *Cirilo C. Hernández- Hernández y otros v. Refricentro, Inc. y otros* y (2) caso civil núm. SJ2021CV01941, *Refricentro, Inc. v. Pedro Arvesú.* A estos efectos, solicitaron que se denegara la solicitud de *injuction* de la parte demandante.[3]

De igual manera, los apelantes presentaron una *Reconvención.*[4] En esta argumentaron que uno de los demandados, a saber, el señor Arvesú Gasset había fallecido recientemente. Sostuvieron que, a consecuencia de su deceso, se había creado un fideicomiso *mortis causa,* el cual se extendía a la totalidad de su patrimonio incluyendo las acciones corporativas que este tenía en Refricentro, Inc. Asimismo, alegaron que lo antes mencionado contravenía el contrato y reglamento corporativo dado a que se le estaba privando a los demás accionistas su derecho de adquisición preferente en el traspaso de dichas acciones. Consecuentemente le solicitaron al TPI la concesión de los siguientes remedios:

a) que reconozca y declare el incumplimiento de los co-demandantes reconvenidos (exceptuando Refricentro, Inc.);

b) que deniegue el *injunction* como solicitado por los demandantes y en cualquier variación al mismo;

c) que declare y reconozca nulo el alegado traspaso de acciones corporativas del Sr. Cirilo C. Hernández-Hernández a la corporación CHH, LLC;

d) que declare y reconozca nulo el alegado traspaso de acciones corporativas del Sr. Pedro Arvesú Gasset a fideicomiso inter-vivos y/o a fideicomiso *mortis causa*;

e) que conceda el *injunction* solicitado en la reconvención, incluyendo cesar y desistir de tratar de ejercer derecho alguno a voto de acciones corporativas sin cumplir con las obligaciones de previo a traspasar notificar su

---

[3] Íd., págs. 186-198. En esencia, en el caso SJ2021CV01941 los demandantes del presente pleito le solicitó al TPI el acceso a ciertos documentos de Refricentro. Inc. puesto que, según ellos, los demandados del presente caso están obstaculizando el deber que ellos presuntamente tienen al acceso a dichos documentos.
[4] Íd., págs. 276-293.

intención y brindar derecho a primer rechazo y compra a las acciones corporativas por valor en los libros de aquellos que han incumplido, incluyendo, a Cirilo Hernández Hernández y Pedro Arvesú Gasset;

f) que ordene el cumplimiento específico del contrato y reglamento por el que los reconvinentes ejercen su derecho a comprar preferencialmente las acciones corporativas del Sr. Cirilo C. Hernández -Hernández y/o Pedro Arvesú Gasset, por su valor en los libros, a diciembre de 2020 cuando han admitido e insisten en incumplir mediante la demanda sus obligaciones para con Refricentro, Inc, y los demás accionistas;

g) que condene a los co-demandantes reconvenidos solidariamente a indemnizar a los reconvinentes y cada uno de ellos por los daños causados por su intencional incumplimiento de sus obligaciones hacia los demás accionistas y hacia la corporación; daños que se estiman en exceso de cinco mil dólares diarios por persona, y a Refricentro, Inc., en exceso de quince mil dólares diarios;

h) que conceda aquellos remedios que sean procedentes en ley, derecho y equidad, incluyendo, pero sin limitarse a declarar la nulidad de las alegadas elecciones y juntas que alegadamente efectuaron los co-demandantes;

i) que en la alternativa declare la nulidad de la votación y reunión entre los demandantes por no estar correctamente convocada la reunión, la falta de notificación, la falta de parte indispensable, la incapacidad mental del Sr. Cirilo C. Hernández-Hernández y el dolo incumplidor en común acuerdo de los co-demandantes.[5]

Tras una serie de eventos procesales los cuales no son necesarios detallar, el 16 de noviembre de 2022, la sucesión Arvesú presentó una *Solicitud de Sentencia Sumaria Parcial*.[6] Mediante esta, formuló nueve (9) hechos que, a su juicio, no estaban en controversia. Así pues, planteó que, ante la inexistencia de hechos esenciales y pertinentes en controversia, únicamente le correspondía al TPI atender el siguiente asunto en controversia: Si

---

[5] Íd., págs. 292-293.
[6] Íd., págs. 536-547. Es importante aclarar que, puesto que al momento de la presentación de este escrito el señor Arvesú Gasset había fallecido, este fue sustituido en el pleito por sus herederos, entiéndase, la Sra. Teresa Irma López Arias, el Sr. Pedro Arvesú López y la señora Irma Arvesú López.

las disposiciones reglamentarias sobre el derecho de adquisición preferente Refricentro, Inc. en su Artículo III (e) de Refricentro, Inc. imposibilitaban que la sucesión de Pedro Arvesú Gasset adquiera los derechos que como accionista este poseía en la corporación.[7]

Además, la sucesión Arvesú esbozó que, el aludido Artículo III (e) hacía referencia a transferencias voluntarias y que, en el caso de autos, ellos habían adquirido las acciones mediante una transferencia involuntaria, entiéndase, mediante una transferencia *mortis causa*. En apoyo de su posición, discutieron una serie de casos resueltos en varias jurisdicciones de Estados Unidos los cuales sustentaban que las restricciones de adquisición de acciones corporativas debían especificar si estas aplicaban a disposiciones testamentarias.

En respuesta, 21 de febrero de 2023, los apelantes presentaron su *Moción en Oposición a Moción de Sentencia Sumaria Parcial* [...].[8] En primer lugar, señalaron los hechos que consideraban que estaban en controversia y los que no. Luego argumentaron que las restricciones a las transferencias de acciones *mortis causa* no tenían que expresarse de manera directa y específica, sino que era suficiente el uso general de la palabra transferencia. A su vez, sustentaron esta hipótesis con cierta jurisprudencia de varias jurisdicciones de Estados Unidos y de la misma forma, distinguieron los casos citados por la sucesión Arvesú y como estos se diferenciaba a la controversia de epígrafe. Por último, plantearon que aún no se había concluido el caso *Irma Alicia Gasset López Ex Parte, Caso Núm. SJ2022CV02075* y por tanto ninguno de los sucesores del señor Arvesú Gasset tenían el control, posesión o derecho propietario sobre su herencia.[9]

---

[7] Íd., pág. 537.
[8] Íd., págs. 588-613.
[9] Posterior a la presentación de la oposición de la moción de sentencia sumaria, el 13 de marzo de 2023, la sucesión Arvesú presentó una réplica a dicha

El 28 de febrero de 2023, la sucesión Arvesú presentó otra *Solicitud de Sentencia Sumaria Parcial* en la cual esgrimió que uno de los accionistas, a saber, el Sr. José Cirilo Hernández García, adquirió de su madre mediante herencia, acciones de Refricentro Inc., sin haberse activado el Artículo III (e) del reglamento de la compañía. En consecuencia, no podía aplicarse selectivamente interpretaciones distintas de esta disposición en perjuicio de la sucesión Arvesú. Por su parte, el 31 de marzo de 2023, los apelantes presentaron una *Moción en Oposición [sic] a Moción de Sentencia Sumaria Parcial* [...].[10] Mediante esta, argumentaron que la sucesión Arvesú no tenía legitimación para cuestionar la transferencia de acciones que se le hiciera al Sr. José Cirilo Hernández García.

Evaluado los escritos de las partes, el 15 de septiembre de 2023, el TPI emitió una *Sentencia Parcial*.[11] En ella, formuló las siguientes determinaciones de hechos pertinentes las cuales no estaban en controversia:

1. El 7 de enero de 1965, Refricentro se incorporó.

2. El Artículo III (e) del Reglamento de Refricentro dispone:

   En el caso de que un accionista de la Corporación desee transferir sus acciones a una tercera persona, deberá notificarlo así al secretario de la Corporación. Este las ofrecerá a los restantes accionistas por escrito, quienes tendrán la opción, de comprarlas por un valor en los libros y en proporción al número de acciones que posea de las que están en circulación.

3. Pedro Arvesú Gasset adquirió y poseyó durante su vida 431,100 acciones de Refricentro, lo que representa un 43.100% de las acciones autorizadas de la corporación.

4. El 1 de abril de 2022, Pedro Arvesú Gasset falleció.

5. Antes de fallecer, Pedro Arvesú Gasset otorgó un testamento abierto, el que fue debidamente recogido en escritura pública y protocolizado.

---

oposición. Por su parte, el 5 de abril de 2023, los demandados presentaron una dúplica a la réplica a la oposición de la sucesión Arvesú.
[10] Véase, págs. 709-722 del apéndice del recurso.
[11] Íd., págs. 739-755.

6. En el testamento de Arvesú Gasset, surgen como sus sucesores y herederos, Teresa Irma López Arias, Pedro Arvesú López e Irma Arvesú López.

7. Pedro Arvesú Gasset en el testamento dispuso que su hijo e Irma Arvesú López, fungiesen como albacea.[12]

A base de estas determinaciones de hechos, el TPI concluyó que la transferencia de las acciones que ocurren por causa de muerte no podían ser consideradas como voluntarias y por ello el derecho de adquisición preferente contenido en el Artículo III (e) del reglamento de Refricentro, Inc. no se activó. En ese sentido, declaró Ha Lugar la solicitud de sentencia sumaria de la sucesión Arvesú instada el 16 de noviembre de 2022, No Ha Lugar la segunda sentencia sumaria presentada el 28 de febrero de 2023 por estos y desestimó con perjuicio la reconvención presentada por los apelantes.

Inconforme, el 3 de octubre de 2023, los apelantes presentaron una *Moción en Solicitud De Reconsideración de la Sentencia Parcial* [...].[13] En esta, adujeron que de las propias determinaciones de hechos formuladas por el TPI se desprendía que la transferencia de las acciones, en efecto, fue voluntaria. Por su parte, el 23 de octubre de 2023, la sucesión Arvesú presentó su *Oposición a Moción de Reconsideración* en la cual arguyó que la jurisprudencia y la doctrina establecían que las restricciones a la libre trasferencia de acciones no aplicaban a las transferencias involuntarias por razón de muerte, salvo que se hicieran constar con claridad y expresamente en el reglamento.[14] Examinadas las posturas de las partes, el 25 de octubre de 2023, el TPI declaró No Ha Lugar la moción de reconsideración.[15]

---

[12] Íd., pág. 747.
[13] Íd., págs. 756-769.
[14] Íd., págs. 770-779.
[15] Íd., págs. 780-783.

Aun inconformes, el 27 de noviembre de 2023, los apelantes presentaron el recurso de epígrafe y formularon los siguientes señalamientos de error:

> **Erró el TPI al Desestimar la Reconvención Enmendada Presentada por los peticionarios, aun cuando dicho Remedio no fue solicitado por los peticionarios en su solicitud de Sentencia Sumaria Parcial, Ni fue Desarrollado en hechos, ni en derecho en la misma.**

> **Erró el TPI al declarar Ha Lugar la Moción de Sentencia Sumaria Parcial presentada por los peticionados.**

El 5 de diciembre de 2023, emitimos una *Resolución* mediante la cual le concedimos a la parte apelada hasta el 27 de diciembre de 2023 para que comparecieran con su escrito en oposición. Oportunamente, el 27 de diciembre de 2023, compareció la sucesión Arvesú con su *Oposición a Solicitud de Apelación* en la cual negaron que los errores imputados por los apelantes fuesen cometidos.

Con el beneficio de la comparecencia de las partes, procedemos a resolver el asunto ante nuestra consideración. *Veamos.*

II.

**-A-**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil, 32 LPRA. Ap. V, R. 36, tiene el propósito primordial de proveer una solución justa, rápida y económica en aquellos casos en que surja de forma clara que no existen controversias materiales de hechos que requieren ventilarse en un juicio plenario y el derecho así lo permita. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015).

Particularmente, la Regla 36.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.2, permite que cualquier parte presente una moción, basada o no en declaraciones juradas, para que se dicte sentencia sumaria a su favor sobre la totalidad o alguna parte de la

reclamación. *Municipio de Añasco v. ASES et al.*, 188 DPR 307, 326 (2013). Al solicitar dicho remedio, la parte que promueve la sentencia sumaria "deberá establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material, o sea, sobre ningún componente de la causa de acción". Íd.

Solicitada la sentencia sumaria basada en declaraciones juradas o en documentos admisibles en evidencia, la parte que se opone a la sentencia sumaria no puede tomar una actitud pasiva y descansar en las aseveraciones o negaciones consignadas en su alegación. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 677 (2018). Por el contrario, dicha parte tiene que refutar los hechos alegados y sustanciar su posición con prueba consistente en contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente. Íd. Es decir, esa persona viene obligada a enfrentar la moción de su adversario de forma tan detallada y especifica como lo ha hecho el promovente en su solicitud puesto que, si incumple con lo antes mencionado corre el riesgo de que se dicte sentencia es su contra. Regla 36.3 de Procedimiento Civil, *supra*; *SLG Zapata- Rivera v. J.F. Montalvo*, 189 DPR 414, 432 (2013).

Ahora bien, según estableció el Tribunal Supremo en el caso *Verá v. Dr. Bravo*, 161 DPR 308, 334-335 (2004), los foros revisores utilizarán los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una sentencia sumaria. Sobre el particular, en *Meléndez González et al. v. M. Cuebas,* supra*, pág. 118, el Tribunal Supremo estableció que al revisar una determinación del foro primario en la que se concedió o denegó una moción de sentencia sumaria debemos: (1) examinar de *novo* el expediente; (2) revisar que la moción de sentencia sumaria y su oposición cumplan con los requisitos de forma codificados en la Regla 36 de

Procedimiento Civil, *supra,* y con los discutidos en *SLG Zapata-Rivera v. J. Montalvo, supra;* (3) en el caso de una revisión de una sentencia dictada sumariamente, debemos revisar si en realidad existen hechos materiales en controversia, y de haberlos, exponer concretamente cuáles están en controversia y cuáles no; y (4) de encontrar que los hechos materiales no están en controversia, debemos revisar de *novo* si el TPI aplicó correctamente el derecho. Véase, además, *Rivera Matos, et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020).

Del mismo modo, el Tribunal Supremo ha reiterado que a menos que existan circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto y que la apreciación de la prueba se distancie de la realidad fáctica o esta sea inherentemente imposible o increíble, el tribunal apelativo deberá abstenerse de intervenir con las determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de credibilidad hechas por el juzgador de los hechos. *Flores v. Soc. de Gananciales*, 146 DPR 45, 49 (1998). En otras palabras, las determinaciones que hace el juzgador de los hechos no deben ser descartadas arbitrariamente ni tampoco deben sustituirse por el criterio del foro apelativo, a menos que de la prueba admitida surja que no existe base suficiente que apoye tal determinación. *Rolón v. Charlie Car Rental, Inc.*, 148 DPR 420, 433 (1999).

**-B-**

Las corporaciones existen en virtud de una ficción jurídica instaurada a través de la Ley Núm. 164-2009, según enmendada, mejor conocida como la *Ley General de Corporaciones*, 14 LPRA sec. 3501 *et seq.* (Ley General de Corporaciones), que las faculta para realizar cualquier gestión lucrativa o sin lucro, siempre y cuando sea lícita. *Rivera Sanfeliz y otros v. Junta de Directores de Firstbank Corporate*, 193 DPR 38, 49 (2015). Dichas entidades facilitan el

desarrollo de las empresas ya que poseen personalidad jurídica propia, distinta e independiente a la de sus dueños o miembros, quienes por lo general no responderán con su patrimonio por los actos de la corporación, sino hasta el monto de su inversión. *Santiago et al. v. Rodríguez et al.*, 181 DPR 204, 214 (2011) citando a: C.E. Díaz Olivo, *Corporaciones*, San Juan, Publicaciones Puertorriqueñas, 2005, pág. 11.

Como mencionamos anteriormente, nuestro ordenamiento jurídico reconoce la existencia de las corporaciones con fines lucrativos lo cual se dedican a hacer negocios y se caracterizan por repartir las ganancias entre sus accionistas. Íd., pág. 215. El propietario de la corporación con fines de lucro es denominado como accionista. Íd. Así pues, quien sea titular de las acciones de una corporación posee una parte alícuota de su capital, un derecho general a participar de sus ganancias y la distribución de sus activos en caso de liquidación. Íd.

La manera de adquirir un interés propietario sobre una corporación es mediante la adquisición de acciones de capital, la cuales se clasifican como bienes muebles. Díaz Olivo, *op. cit.,* pág. 308-309. El Art. 5.01 de la Ley General de Corporaciones, 14 LPRA sec. 3581, establece las distintas clases y series de acciones de capital corporativo. Particularmente, una acción corporativa es un interés o cuota perteneciente al accionista individualmente en la propiedad de la corporación. *Santiago v. Rodríguez*, supra, págs. 215-217.

Por otro lado, como norma general, el derecho que representa la tenencia de una acción de capital de una corporación se desprende del registro de accionistas o se establece mediante la presentación por el accionista del certificado de acciones expedido por la corporación de la que se trate. Díaz Olivo, *op. cit.,* pág. 311. Sin embargo, cabe precisar que, los mecanismos antes mencionados

no constituyen la única forma para evidenciar que una persona es accionista. *Santiago v. Rodríguez,* supra, pág. 224. Nuestro derecho corporativo y su jurisprudencia interpretativa reconoce la posibilidad de que, ante la ausencia del certificado de acciones o registro de accionistas, la parte reclamante pueda probar su carácter de accionista mediante prueba extrínseca.

Ahora bien, en nuestro ordenamiento jurídico se ha reconocido la capacidad de restringir la transferencia de las acciones de las corporaciones. Para llevar a cabo esto, es necesario que la corporación se ciña a los dispuesto en el Capítulo 6 de la Ley General de Corporaciones. El Art. 6.02 (A), del aludido estatuto dispone que:

> Una restricción escrita relativa al traspaso o la inscripción del traspaso de las acciones u otros valores de una corporación, si la misma está permitida por este Artículo y está consignada conspicuamente en el certificado que representa dichas acciones o; en el caso de acciones sin certificado, aparece en la notificación enviada de acuerdo con el inciso (F) del Artículo 5.01 de esta Ley, será válida contra el tenedor de dicho valor restringido o cualquier sucesor o cesionario de dicho tenedor, incluso un albacea, administrador, síndico, tutor u otro fiduciario que tenga responsabilidad análoga por la persona o los bienes del tenedor. A menos que dicha restricción esté consignada de manera conspicua en el certificado que representa dicha acción o, en el caso de acciones sin certificado, aparezca en la notificación enviada de acuerdo con el inciso (F) del Artículo 5.01 de esta Ley, la misma será ineficaz, excepto contra una persona con conocimiento real de tal restricción. 14 LPRA sec. 3622.

En cuanto a las restricciones permitidas por el Art. 6.02, el inciso C enumera las restricciones que pueden aplicarse, a saber:

1. obliga al tenedor de los valores restringidos a ofrecer a la corporación o a cualquier otro tenedor de acciones de la corporación o a cualquier otra persona o combinaciones de éstas, una oportunidad preferente de adquirir, durante un plazo razonable, los valores restringidos; u

2. obliga a la corporación o a cualquier tenedor de valores de la corporación o a cualquier otra persona o combinación de éstas a comprar los valores que son objeto de un contrato referente a la compra y venta de valores restringidos; o

3.  requiere que la corporación o los tenedores de cualquier clase de valores de la corporación consientan a todas las transferencias de valores restringidos que se propongan o que aprueben al propuesto cesionario de tales valores restringidos; y

4.  prohíbe el traspaso de los valores restringidos a personas o clases de personas designadas, y tal designación no es manifiestamente irrazonable. Íd.

Por otro lado, el Art. 5.01 (F) requerido por el ya citado Art. 6.02 (A) dispone:

Si se facultara a una corporación para emitir más de una clase de acciones o más de una serie de cualquier clase, las facultades, denominaciones, preferencias y los derechos relativos de participación, de opción o de otros derechos especiales de cada clase o serie, así como las condiciones, limitaciones o restricciones de tales preferencias o derechos, se consignarán en su totalidad o serán resumidos en la faz o el reverso del certificado o certificados que emita la corporación para representar tales clases o series de acciones. [...] Después de transcurrido un plazo razonable desde la emisión o transferencia de acciones no representadas por un certificado, la corporación enviará, al tenedor inscrito de las mismas, una notificación escrita con la información que este Artículo o el Artículo 5.07, el inciso (A) del Artículo 6.02 o el inciso (A) del Artículo 7.08 de esta Ley, requieren que se consigne en los certificados o, según dispone este Artículo, una declaración al efecto de que la corporación proveerá, sin costo alguno para cada accionista que así lo requiera, una relación de tales derechos, denominaciones, preferencias y derechos relativos de participación, de opción o de cualquier otro derecho especial de cada clase o serie de acciones y las condiciones, limitaciones o restricciones de tales preferencias o derechos. [...] 14 LPRA sec. 3581.

Finalmente, el propio Capítulo 6 de la *Ley General de Corporaciones*, en su Art. 6.01 establece que el traspaso de acciones será regido por el Capítulo 8 de Ley Núm. 208 de 17 de agosto de 1995, según enmendada, mejor conocida como de Ley de Transacciones Comerciales, 19 LPRA sec. 401 *et. seq.* La sec. 8-204 de la referida legislación dispone lo siguiente:

Una restricción a la transferencia de un valor impuesta por un emisor, aunque de otro modo legal, no será válida contra una persona que no tenga conocimiento de la misma, a menos que:

(1) el valor sea con certificado y la restricción esté anotada conspicuamente en el certificado de valor; o

(2)  el valor sea sin certificado y el dueño registrado haya sido notificado de la restricción. 19 LPRA sec. 1754.

-C-

El Código Civil de Puerto Rico establece que la sucesión por causa de muerte es la transmisión de aquellos derechos y obligaciones del causante que no se extinguen por su muerte. Art. 1546, Código Civil de Puerto Rico del 2020, 31 LPRA sec. 10911. De esta forma, esta sucesión se abre, precisamente, con la muerte del causante. Íd., sec. 10912. Por otro lado, nuestro Código Civil reconoce tres clases de transmisión sucesoria, a saber, la testamentaria, la intestada y la mixta. Íd., sec. 10913. La sucesión testada es aquella que resulta de la voluntad de la causante declarada en un testamento. Íd., sec.10914. Por el contrario, la sucesión intestada es aquella que establece la ley, cuando no existen disposiciones testamentarias. Íd., sec. 10915. Finalmente, la sucesión mixta se define como aquella en la cual coexisten disposiciones provista por la voluntad declarada en un testamento y disposición de ley. Íd., sec. 10916.

Por otro lado, el concepto herencia constituye los derechos y obligaciones transmisibles por causa de muerte de una persona "ya sea que los derechos excedan las obligaciones; que las obligaciones excedan los derechos, o solo se trate de obligaciones". Íd., sec. 10917. Así pues, el heredero es la persona que sucede al causante en todos los derechos y las obligaciones transmisibles, a título universal y el legatario es aquel que sucede al causante en bienes específicos o en una parte alícuota, la cual se designa a título particular. Íd., sec. 10918.

Ahora bien, el Tribunal Supremo de Puerto Rico ha reiterado en varias ocasiones "que nuestro derecho sucesorio alcanza las relaciones jurídicas —tanto activas como pasivas— que constituían el patrimonio de la persona a la fecha de su muerte". *Torres, Torres*

*v. Torres Serrano*, 179 DPR 481, 496 (2010). Pese a que no todo es susceptible a transmitirse por herencia, **la norma prevaleciente sostiene la transmisibilidad de la inmensa mayoría de los elementos que componen el patrimonio de una persona fallecida**. (Énfasis suplido) Íd. De esta forma, en nuestro ordenamiento jurídico, los derechos patrimoniales son transmisibles por herencia, salvo aquellos que, por sus características, disposición de ley o pacto sean intransmisibles Íd., pág. 497. Tampoco podrán transmitirse aquellos derechos que sean personalísimos los cuales concluyen con la vida del titular. Íd., pág. 496.

En cuanto a las relaciones jurídicas trasmisibles mediante la sucesión *mortis causa*, nuestro Tribunal Supremo, citando al tratadista Puig Brutau, ha expresado que los siguientes derechos se pueden transferir por este medio:

> [l]os derechos patrimoniales; **los derechos de socio en las sociedades de capitales;** la cualidad de socio en las sociedades de personas; la acción para reclamar la filiación legítima; la acción para impugnar los actos o negocios jurídicos realizados por el causante en fraude de la legítima; las diversas modalidades de la propiedad industrial; el derecho de autor; las obligaciones, salvo las de carácter personalísimo o cuando se trata de una prestación infungible; la propiedad funeraria; el derecho del causante a obtener indemnización por los daños y perjuicios que le hayan ocasionado en vida.(Énfasis suplido) *Sucn. Álvarez v. Srio. de Justicia*, 150 DPR 252, 267–268, (2000) citando a J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1975, T. V, Vol. I, págs. 4463.

De otra parte, es preciso destacar que nuestro derecho sucesorio tiene como base el derecho romano, el cual se fundamenta en el criterio de que "**la posición jurídica que ocupaba el causante se mantendrá en lo posible inalterable, a base de colocar en su lugar al heredero**" (Énfasis suplido) *Ex parte Feliciano Suarez*, 117 DPR 402, 413, (1986) citando a J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1975, T.V, Vol. 1, pág. 11. Por tal motivo, más que un fenómeno de adquisición se trata

más bien de una **sustitución de titular**. Íd. De ahí, es que en nuestro ordenamiento jurídico se ha resuelto que "**la sustitución del causante por sus herederos constituye una continuación de su personalidad**". Cruz Pérez v. Roldan Rodríguez, 206 DPR 261, 268 (2021); *Sucesión Dávila v. El Registrador de la Propiedad*, 15 DPR 669,673 (1909).

En fin, en Puerto Rico, "[s]uceder, en su sentido jurídico, significa que una persona se coloca en la posición de otra, asumiendo todos sus bienes, derechos y obligaciones, con excepción de aquellos que sean personalísimos y, consecuentemente, no susceptible de ser transferidos". *Herederos de Collazo v. Registrador*, 172 DPR 776, 783 (2007). Así pues, en la sucesión *mortis causa* "se suscita el desplazamiento en las relaciones jurídicas detentadas por el causante sobre sus bienes, derechos y obligaciones transferibles". Íd.

## III.

En el presente caso, los apelantes solicitaron la revocación de una *Sentencia Parcial* que dictó el TPI el 15 de septiembre de 2023 y se notificó el 18 de septiembre de 2023. Específicamente, en su primer señalamiento de error, los apelantes argumentaron que el TPI incidió al desestimar con perjuicio la reconvención presentada por estos. Asimismo, en su segundo señalamiento de error, los apelantes esbozaron que el TPI erró al declarar Ha Lugar la solicitud de sentencia sumaria que presentó la sucesión Arvesú.

Previo a discutir los señalamientos de error previamente reseñados, cabe precisar que, al momento de revisar la concesión de una sentencia sumaria, nos encontramos en la misma posición que el foro primario. A tono con esta norma, debemos evaluar, en primer lugar, si al presentar la solicitud de sentencia sumaria y su oposición las partes cumplieron con los requisitos de forma establecidos en la Regla 36.3 de Procedimiento Civil, *supra,* y con

los dispuestos en *SLG Zapata-Rivera v. J.F. Montalvo,* supra. Al evaluar los escritos presentados por las partes juzgamos que, en esencia, ambas cumplieron con los referidos requisitos. Es decir, la sucesión Arvesú presentó una serie de párrafos enumerados de los hechos que considera incontrovertidos, los cuales, a su vez, hacían referencia a la prueba en que se apoyaba. De la misma manera, los apelantes señalaron los hechos que, a su juicio, estaban en controversia y lo sustentaron con prueba documental. Resuelto lo anterior, nos corresponde entonces evaluar si existen hechos materiales en controversia que nos impidan dictar sentencia sumaria.

En su dictamen, el foro primario realizó siete (7) determinaciones de hechos que no estaban en controversia las cuales procederemos a resumir y adoptar en su totalidad. El Sr. Pedro Arvesú Gasset poseyó durante su vida 431,100 acciones de Refricentro, Inc., Dichas acciones, estaban cobijadas por el Artículo III (e) del reglamento de Refricentro el cual dispone lo siguiente:

> En el caso de que un accionista de la Corporación desee transferir sus acciones a una tercera persona, deberá notificarlo así al secretario de la Corporación. Este las ofrecerá a los restantes accionistas por escrito, quienes tendrán la opción, de comprarlas por un valor en los libros y en proporción al número de acciones que posea de las que están en circulación.

Desafortunadamente, el 1 de abril de 2022, el señor Arvesú Gasset falleció. Sin embargo, antes de su deceso, otorgó un testamento abierto el cual fue debidamente recogido en escritura pública y protocolizado. De dicho testamento surgen como sus sucesores y herederos las siguientes personas: la Sra. Teresa Irma López Arias, el Sr. Pedro Arvesú López y la Sra. Irma Arvesú López.

Tras haber revisado la totalidad del expediente, evaluados los argumentos de las partes y aquilatada la prueba documental que obra ante nos, concluimos que no existen hechos sustanciales en controversia que impidan dictar sentencia sumaria. Por ello, nos

resta determinar si en efecto, el precitado Artículo III (e) del Reglamento de Refricentro imposibilita que la sucesión de Pedro Arvesú Gasset adquiera los derechos que como accionista este poseía en la corporación. *Veamos.*

A continuación, procederemos a discutir el segundo señalamiento de error formulado por los apelantes referente a si procedía conceder la solicitud de sentencia sumaria instada por la sucesión Arvesú. Conforme surge del expediente, el señor Aversú Gasset, otorgó un testamento abierto en el cual instituyó como herederos en partes iguales de la legítima estricta, mejora y libre disposición a sus dos hijos, el Sr. Pedro Arvesú López y la Sra. Irma Arvesú López.[16]  A su vez, en dicho testamento el señor Aversú Gasset legó ciertos bienes a quien en vida fuese su esposa, la Sra. Teresa Irma López Arias.[17]

Es un hecho incontrovertible que dentro del patrimonio que poseía el señor Aversú Gasset antes de morir se encontraban 431,100 acciones de Refricentro, Inc. En nuestro ordenamiento jurídico las acciones de capital son derechos que pueden transmitirse mediante sucesión *mortis causa,* pues en el sistema sucesorio puertorriqueño persiste la norma general de que todo el patrimonio del causante es trasmisible a no ser que el derecho en cuestión sea personalísimo o exista un impedimento en ley o un pacto que prohíba dicha transferencia. *Torres, Torres v. Torres Serrano,* supra, pág. 496-497.

De un examen de la prueba que obra en el expediente, no hallamos ningún impedimento que imposibilite que las acciones del señor Aversú Gasset pudiesen transmitirse por medio de un testamento a sus herederos. Las acciones de capital son pues,

---

[16] Véase, págs. 518-526 del apéndice del recurso. Es preciso aclarar que las porciones correspondientes a la mejora y libre disposición se constituyó en un fideicomiso.
[17] Id., págs. 518-520.

bienes muebles enajenables, por lo cual estas no son personalísimas. Por otro lado, en este caso específico, tampoco existe ningún impedimento legal que prohíba que la sucesión Arvesú herede las acciones en controversia.

Ahora bien, el reglamento de Refricentro incorporó un derecho de adquisición preferente que limita la transferencia de las acciones de la corporación a terceras personas. Sin embargo, dicha limitación no se extiende a una sucesión *mortis causa*. Ello obedece a la reiterada norma de que, en nuestro sistema de derecho, **la posición jurídica que ocupaba el causante se mantendrá en lo posible inalterable, a base de colocar en su lugar al heredero.** *Ex parte Feliciano Suarez,* supra, pág. 413. Bajo este criterio, el que la sucesión Arvesú adquiera las acciones del señor Arvesú Gasset, no constituye una transferencia a terceras personas toda vez que en Puerto Rico **la sustitución del causante por sus herederos constituye una continuación de su personalidad.** *Cruz Pérez v. Roldan Rodriguez*, supra pág. 268.

Acorde con lo previamente esbozado, al presente, la sucesión Arvesú está ocupando la posición jurídica que en vida ocupaba el señor Arvesú Gasset. Esto constituye estar en la misma posición como accionistas de Refricentro, Inc. Por ello, no puede concluirse que el derecho de adquisición preferente que provee el Artículo III (e) del reglamento de Refricentro puede activarse en contra de la sucesión Arvesú, toda vez que del texto de dicha disposición no se desprende ninguna prohibición referente a que las acciones de la corporación no puedan heredarse. A tono con la discusión que antecede, colegimos que el TPI no incidió en declarar Ha Lugar la *Solicitud de Sentencia Sumaria Parcial* presentada por la sucesión Arvesú el 16 de noviembre de 2022, por lo tanto, el segundo señalamiento de error formulado por los apelantes no se cometió.

Resuelto lo anterior, nos resta atender el primer señalamiento de error formulado por los apelantes el cual versa sobre la desestimación con perjuicio de una reconvención presentada por estos. La mencionada reconvención solicitaba, entre otros, una serie de remedios entre las cuales destacaban los siguientes: reconocer nulo el traspaso de acciones corporativas del Sr. Cirilo Hernández a la corporación Cirilo Hernández Hernández, LLC; declarar el traspaso de acciones corporativas del señor Arvesú Gasset a un fideicomiso *mortis causa*; ejercer su derecho a compra preferente de las acciones corporativas del Sr. Cirilo C. Hernández Hernández y Pedro Arvesú Gasset; remedios relacionados a declarar la nulidad de las alegadas elecciones y juntas que efectuaron algunas de las partes, entre otras.

Nótese que, en la reconvención coexistían varias reclamaciones de distinta naturaleza y no solamente aquellas relacionadas a las acciones del señor Arvesú Gasset. Es decir, la reconvención contenía reclamaciones que no fueron dispuestas en la solicitud de sentencia sumaria presentada por la sucesión Arvesú, quedando así causas de acción sin resolver y que, por lo tanto, aún persisten. En virtud de ello, concluimos que se cometió el primer señalamiento de error. A esos efectos, corresponde modificar la *Sentencia Parcial* apelada únicamente a los efectos de revocar la desestimación con perjuicio de la reconvención, exceptuado aquellas causas de acción relacionadas con la transferencia *mortis causa* de las acciones del señor Arvesú Gasset, las cuales fueron atendidas con la disposición de la solicitud de sentencias sumaria del 16 de noviembre de 2022 presentada por la sucesión Arvesú.

IV.

Por lo antes expuesto, ***modificamos*** el dictamen apelado a los únicamente a los efectos de revocar la desestimación con perjuicios de la reconvención enmendada. Así modificada, ***confirmamos***.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones